**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ALAN CHRISTOPHER REDMOND, Debtor | Case No. 24-13093-PMM |
| JASON SCOTT JORDAN, Plaintiff, | Involuntary Chapter 11 |
| v. | |
| ALAN CHRISTOPHER REDMOND, Defendant. | Adv. Proc. No. 24-00145-PMM |

**PRAECIPE TO ATTACH EXHIBIT**

TO THE CLERK:

Kindly attach the within Exhibit A to the Complaint filed on December 6, 2024 in this

Adversary Proceeding.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: December 9, 2024              By:      /s/ Joel A. Ready
                                                          Joel A. Ready, Esquire
                                                          Attorney I.D. #321966
                                                          8500 Allentown Pike, Suite 3
                                                          Blandon, PA 19510
                                                          (610) 926-7875

1

# Exhibit A

# Exhibit A

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

| | | |
|---|---|---|
| NATIONAL BROKERS OF AMERICA, INC., and | : | IN THE COURT OF COMMON PLEAS OF BERKS COUNTY, PENNSYLVANIA |
| ALAN CHRISTOPHER REDMOND, | : | CIVIL DIVISION |
| Plaintiffs | : | |
| vs. | : | NO.: 14-17117 |
| | : | |
| JASON SCOTT JORDAN, | : | |
| Defendant | : | Assigned to: Timothy J. Rowley, J. |

## DECISION AND VERDICT

Introduction

1.    As will be clear, the Court accepted nearly all of Defendant Jason Scott Jordan's Corrected Proposed Findings of Facts.  Before doing so, the Court reviewed the listed Findings of Facts and where appropriate, double checked the citations to the trial transcript for accuracy and reviewed my copious notes taken during the trial.

2.    The Court, throughout much of the Facts Established referred to Defendant Jason Scott Jordan as "Jordan" and Plaintiff Alan Christopher Redman as "Redmond".

3.    References to Exhibits identified as Plaintiff's Exhibits were so marked as the trial consisted solely of the claims of Jordan as a Counter Claim Plaintiff.

Facts Established

4.    National Brokers of America, Inc. ("NBOA") became incorporated in February of 2013, and Redmond operated NBOA as an insurance sales call center.

5.    Because NBOA was not profitable at that time, and because Jordan had approximately 13 years' experience in sales, closing deals, and setting up and managing insurance call centers, Redmond induced Jordan to leave his family in Florida and moved

1

to Pennsylvania to set up and run the NBOA call center in July 2013.

6.      By written employment agreement dated July 31, 2013 (the "Employment Agreement") which was marked as Plaintiff's Exhibit 1, Jordan was hired as an employee of NBOA.

7.      Plaintiff's Exhibit 1 was drafted by NBOA's attorney and requires that modifications be in writing.

8.      At the time Jordan was hired as an employee of NBOA in July 2013, Redmond was the sole owner of NBOA and NBOA was on the brink of financially failing.

9.      Between July 31, 2013 and October 31, 2013, NBOA paid Jordan $23,778.00 less than the sum that was due under the Employment Agreement and such sum is itemized accurately within Plaintiff's Exhibit 17.

10.     When NBOA was unable to pay Jordan what he was owed under the Employment Agreement, Redmond offered 50% of the NBOA stock to Jordan as non-voting stock and Jordan declined such offer as it left Redmond as a voting shareholder and Jordan would have been non-voting.

11.     As of November 1, 2013, Redmond and Jordan became 50/50 shareholders of NBOA each having exactly 1 voting stock and those two stocks being all of the stock that were issued. Plaintiffs Exhibit 2-B, 3, 4, and 5 memorialize this and the signatures on these documents are those of Redmond and Jordan respectively.

12.     Redmond confirmed Jordan's 50% ownership of NBOA in directing the accountant to list Redmond and Jordan as 50/50 owners of NBOA stock in the 2013 tax returns.

13.     At no time after November 1, 2013 did Jordan resign his employment or

2

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

management or ownership of NBOA.

14.     As of November 25, 2013, Jordan and Redmond were the only Directors and Shareholders of NBOA. See Plaintiff's Ex 3.

15.     Plaintiff's Exhibit 6 is the governing Amended and Restated Bylaws of NBOA.

16.     The Shareholder's Agreement dated November 1, 2013 (the "Shareholder's Agreement") found at Plaintiff's Exhibit 2-B has not been amended or superseded and was in effect at all times relevant to the dispute in this case.

17.     The Amended and Restated Bylaws of NBOA at (the "Bylaws") found at Plaintiff's Exhibit 6 has not been amended or superseded and was in effect at all times relevant to the dispute in this case.

18.     Section 2.07 of the Bylaws required a majority of the votes to take action and thus consent of both Redmond and Jordan was required to take action under the Bylaws.

19.     Although Section 3.04 of the Bylaws required notice of any special meeting of the Directors, Redmond never gave Jordan notice of a special meeting of the Directors to discuss Redmond's plan to freeze Jordan out of NBOA.

20.     JORDAN WAS NEVER REMOVED AS A FIFTY PERCENT SHAREHOLDER AND AS A DIRECTOR OF NBOA.

21.     From November 2013 until August 4, 2014, Redmond and Jordan took equal pay, took equal distributions, acted at all times as having equal authority in the management of NBOA. They were the only shareholders, and were the only directors.

22.     From November 2013 until August 4, 2014 Redmond and Jordan were the

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

only two officers and they intended to each have equal authority despite having different titles as officers. See Plaintiff's Exhibit 31.

23.   From November 2013 until August 4, 2014 Redmond and Jordan agreed that Redmond would have primarily responsibility for the corporate finances and Jordan would have primary responsibility for the operations of NBOA.

24.   Although NBOA was in a very poor financial condition prior to November 2013, from such time until August 4, 2014, NBOA became very profitable.

25.   NBOA's gross sales in 2013 were approximately $365,000 and in 2014 they increased to over four million.

26.   This new profitability of NBOA in 2014 was due to Jordan's contributions.

27.   From January 2014 until August 4, 2014, NBOA went from doing one health insurance sale per day to 1,000 per month.

28.   On August 4, 2014, Redmond changed the locks on the NBOA place of business without giving Jordan a key and posed an armed guard at the NBOA place of business so that Jordan could not enter (the "Freeze Out").  Further, on such date and continuing through the present, Redmond has (1) prevented Jordan from participating in the operations and management of NBOA, (2) refused to provide Jordan with any financial or management information of NBOA excepting litigation discovery, (3) kept earnings, profits, and distributions solely for himself without sharing any with Jordan, (4) publicly claimed to be a 100% owner of NBOA, and (5) treated Jordan in all respects as a total stranger to NBOA and not a Director or Shareholder of NBOA.

29.   In short, on August 4, 2014, Redmond froze Jordan out of NBOA (the "Freeze Out") and such Freeze Out continues through the present.

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

30.     Prior to the Freeze Out both Jordan and Redmond had access to NBOA's bank accounts.

31.     Prior to the Freeze Out Jordan and Redmond took equal dividends from NBOA.

32.     Prior to the Freeze Out Redmond stated to NBOA employees that Jordan "is the best at what he does." Plaintiff's Exhibit 30.

33.     The reason that Redmond wrongfully Froze Out Jordan was because Redmond decided NBOA was finally making money and Redmond didn't need Jordan any longer as the call center was set up and running. Plaintiff' Exhibit 41 at p.3

34.     Prior to the Freeze Out, Redmond had offered investors one percent on nonvoting stock of NBOA for the sum of $250,000.

35.     After the Freeze Out, Redmond sold Ron Pack (Plan Z, LLC) 4% of NBOA's stock for $250,000. Plaintiff's Exhibit 34

36.     Following Redmond's Freeze Out of Jordan in 2014, he took $250,000 from Plan Z, LLC in 2015 in exchange for 4% of NBOA's stock and then Redmond did to Plan Z, LLC essentially the same thing he did to Jordan—i.e., he suddenly claimed that Plan Z, LLC was not a stockholder, he used C. Malcolm Smith to file tax returns that Redmond and Smith knew were incorrect, and he kept all of the investment for himself without ever buying out or repaying Plan Z, LLC.

37.     C. Malcolm Smith was not a credible witness. He provided no credible testimony in support of Redmond. In many cases his own written correspondence contradicted his testimony.

38.     Redmond failed to give Jordan notice of any shareholders meetings

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

following the Freeze Out and the same was in violation of the Bylaws.

39. Since the Freeze Out Redmond had continuously prevented Jordan from any involvement as a Director of NBOA and had failed to share NBOA's financial information with Jordan.

40. Since the Freeze Out Redmond has completely failed to keep or produce any corporate documents for NBOA.

41. Redmond's timing of the Freeze Out was just as the open enrollment period for the health insurance marketplaces selling newly mandated health insurance by the government under the Affordable Care Act were starting and Redmond and Jordan both knew that this would be a financial benefit to NBOA due to huge numbers of people that would be in the market to purchase health insurance.

**42. * Regarding the Shareholders' Agreement (Plaintiff's Exhibit 2 B): At trial Redmond failed to present any evidence that immediately leading up to or after the Freeze Out there was any:**

> **a. consent of Jordan for transfer of Jordan's 1 voting stock under Section 1.2;**
>
> **b. actual authority to terminate Jordan's employment or management of NBOA under Section 1.3;**
>
> **c. event requiring mandatory repurchase of Jordan's Stock under 1.3 or 1.4;**
>
> **d. event of a sale triggering valuation under Section 2.1; or**

*Paragraphs 42, 43 and 44 are in bold print to highlight the Court's finding that these proven facts are the key to this decision.*

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

e. event terminating the Shareholders' Agreement under Section 2.6 before the 2019 Bankruptcy of NBOA filed by Redmond.

43. Jordan never surrendered to the NBOA his certificate for NBOA stock under Section 2.6 of the Shareholders' Agreement.

44. Regarding the Amended Bylaws: At trial Redmond failed to present any evidence that immediately leading up to or after the Freeze Out there was any:

a. quorum of the shareholders required under Section 2.03 or 3.08 for any NBOA business;

b. written notice of a meeting required under Section 2.04 or 2.05;

c. removal of Jordan as a Director under Section 3.02;

d. regular or special meeting of the Board under Section 3.06, or 2.07;

e. consent to informal action by Jordan under Section 3.09;

f. removal of Jordan as a Director under Section 3.14;

g. resignation of Jordan as an officer under Section 4.02;

h. election of a successor to Jordan as an officer under Section 4.05

i. keeping of proceedings of the shareholders and of the Directors as required by Section 7.01;

j. transfer of Jordan's shares made on the books of NBOA as would have been required under Section 8.02 if any transfer took place;

k. proper authority under Section 8.03 for Redmond's payment to himself of dividend or distribution;

l. written notice given to Jordan as required under Section 9.03;

m. consent by Jordan of informal action by Shareholders under Section

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

**9.06.**

45. At all times following the August 4, 2014 Freeze Out, Redmond violated Section 8.05 of the Amended Bylaws in paying dividends of NBOA to himself only and not to Jordan.

46. At all times following the August 4, 2014 Freeze Out, Redmond violated Section 9.08 of the Amended Bylaws in not furnishing to Jordan annual financial statements of NBOA.

47. Jordan gave notice of his dissent of Redmond's Freeze Out actions by filing a Counterclaim against Redmond on December 11, 2014 (see Paragraph 109).

48. The Shareholders Agreement and Amended Bylaws do not vary the applicable law which affords redress in this situation — i.e., Redmond acting *ultra vires* to freeze Jordan out of NBOA and keep all benefits of NBOA solely for himself.

49. The NBOA tax returns from 2013-2017 (Plaintiff's Exhibits 9-13) were prepared by accountant, C. Malcolm Smith, with information provided by Redmond.

50. Redmond knowingly and intentionally lied to C. Malcolm Smith to induce the materially false statement on the 2014-2017 NBOA returns that Redmond was the owner of 100% of the NBOA shares.

51. Following the Freeze Out, Redmond paid for his personal (and extravagant) expenses (including a strip club, Babies-R-Us, jewelers, and $118,907.27 at Neiman Marcus) directly from the NBOA financial account and the same are recorded on the NBOA General Ledger (Plaintiff's Exhibits 12-16) and accurately summarized on Plaintiff's Exhibit 18 in the amount of $604,126.45 ("Redmond's Personal Expenses") and are in addition to funds taken by Redmond as reported on the NBOA tax returns.

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

52.     Redmond provided no documents at trial to support a finding that Redmond's Personal Expenses were claimed by Redmond as income on his personal tax returns and thus this Court finds that the $604,126.45 taken from NBOA for Redmond's Personal Expenses was taken by Redmond in addition to all other funds taken by Redmond as documented on Redmond's personal tax returns.

53.     Much of the testimony by Redmond's accountant, C. Malcolm Smith, was not found to be credible as it was serving only to Redmond's interest and not supported by documents that, if they existed, would certainly have been in the possession of C. Malcolm Smith, and or Redmond's counsel and would have been presented by Redmond at trial.

54.     Testimony by Redmond's accountant, C. Malcolm Smith, that Redmond's Personal Expenses were somehow subsumed within Redmond's claimed capital gains income was not credible when year after year from 2014 through 2017 he permitted Redmond to continue to run all of Redmond's personal expenses through the NBOA books without changing or stopping this clearly improper conduct and with no documentation from C. Malcolm Smith to support such assertion.

55.     Following the Freeze Out, Redmond took $116,738.60 in cash from NBOA. Plaintiff's Exhibit 20.

56.     Redmond provided no evidence to suggest that the $116,738.60 in cash taken by Redmond from NBOA accounts from the time of the Freeze Out through 2/2/2018 was anything other than cash misappropriated by Redmond from NBOA that was not reported on any tax return and thus it is found that such funds were knowingly, wrongfully taken by Redmond from NBOA in addition to funds reported on tax returns.

9

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

57. Following the Freeze Out, Redmond wired the sum of $56,000 paid by wire to Redmond's mother, Maria Redmond.

58. Redmond provided no evidence to suggest that the $56,000 paid to Redmond's mother from the time of the Freeze Out through 7/24/2017 was for any legitimate business purpose for value received, and thus it is found that such funds are deemed as knowingly misappropriated by Redmond from NBOA and are in addition to funds reported on tax returns.

59. Redmond provided no evidence of any legitimate business purpose for value received justifying the $361,782.72 paid by Redmond from NBOA's funds to another of Redmond's companies in which he is a 96% owner, Bene Market, LLC and thus it is found that such funds are knowingly misappropriated by Redmond from NBOA and are in addition to funds reported on tax returns.

60. Following the Freeze Out, in 2017 and 2018 Redmond misappropriated NBOA's book of residual business to his new company, Bene Market, LLC at a discounted rate and without the consent of Jordan and such transfer produced the shutting down of NBOA in 2018.

61. As a result of Redmond's misappropriation of NBOA's valuable book of business to Bene Market, LLC in 2017, the latter's gross receipts went from $764,545 in 2016 to $17,295,549 in 2017. See Plaintiff's Exhibits 43 and 44.

62. Public advertisements of NBOA and Bene Markets, LLC as a single business entity were done by or at the direction of or with Redmond's knowledge. See Plaintiff's Exhibits 24, 25, and 26.

63. From August 11, 2014 through February 6, 2018, Redmond, without

10

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Jordan's authorization, spent $270,945.05 from NBOA funds on lawyers in the instant action. See Plaintiff's Exhibit 27.

64.     Despite the Court expressly informing Redmond's counsel that evidence should be provided to confirm that no portions of these legal fees were related to the instant action and despite having every opportunity to do so at trial where documents, if any, would certainly be in Redmond's possession, Redmond failed to present any evidence showing what portion of the $270,945.05 was unrelated to the instant matter. .

65.     Redmond had no authority to spend $270,945.05 on legal fees and he personally derived a benefit from the use of the same in his defense in this case and thus the sum of $270,945.05 is properly considered to be misappropriated from NBOA by Redmond and is in addition to aforementioned funds misappropriated by Redmond as reported on the tax returns.

66.     Exhibit 28 is an accurate accounting of money misappropriated from NBOA by Redmond since the August 4, 2014 Freeze Out of Jordan, showing the amount of $3,065,899.33 (which sum does not include either the $270,945.05 in unauthorized attorneys' fees or the sum of $361,782.72 misappropriated by Redmond to Bene Market, LLC). Thus, the total known sum that Redmond misappropriated from NBOA following the Freeze Out is $3,698,627.10.

67.     Redmond's personal assets included four companies in Ireland as of 2015 (Plaintiff's Exhibit 41).

68.     Because of Redmond's refusal to comply with the Court's Orders to appear at a deposition, at which time he would have been deposed regarding his personal assets as relevant to the issue of punitive damages, by Order dated August 31, 2021, Redmond

11

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

was precluded from testifying at trial.

69.    Aside from the filing of tax returns (which contained material misstatements of fact regarding ownership) Redmond failed to observe any corporate formalities of NBOA following the Freeze Out.

70.    Redmond misappropriated the services of employees and assets (including NBOA's clients) of NBOA and transferred the same to an identical business, Bene Market, LLC. The latter was engaged in selling the same products, using the same office space and same furniture and equipment for Redmond's own personal benefit and to the detriment of Jordan without Jordan's consent. Based on the foregoing, Bene Market, LLC is found to be a mere continuation of NBOA for purposes of ownership interest and rights as between Redmond and Jordan. Plaintiff's Exhibit 42 at 54-63.

71.    Redmond caused NBOA to file for Chapter 7 Bankruptcy in May 2019. (Plaintiff's Exhibit 42 at 10:23).

72.    Redmond failed to provide any explanation for the $764,164 "Administrative Fee" claimed on the Bene Market, LLC 2016 tax return and thus pursuant to the accompanying K-1 for Redmond, $733,963 is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 43.

73.    Redmond took $2,842,276 from Bene Market, LLC in 2017 as "Guaranteed payments" and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 45.

74.    Redmond took $1,294,182 from Bene Market, LLC in 2018 as "Guaranteed

12

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

payments" and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 46.

75.     Redmond took $3,125,623 from Bene Market, LLC in 2019 as "Guaranteed payments" and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 47.

76.     Redmond took $3,801,821 from Bene Market, LLC in 2020 as W-2 wages and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 48.

77.     In summary, in addition to the $3,698,627.10 that he took directly from NOBA Redmond also took from Bene Market, LLC at least the following sums:

   a. 2016: $733,963

   b. 2017: $2,842,276

   c. 2018: $1,294,182

   d. 2019: $3,125,623

   e. 2020: $3,801,821

   Total taken by Redmond from Bene Market, LLC through 2020: **$11,797,865**

78.     Thus, the sum of money that Redmond misappropriated from NBOA and Bene Market, LLC, and did not share with Jordan, equals **$15,496,492**.

79.     While Redmond did not disclose the general ledger for Bene Market, LLC, the tax returns contain indicia that Redmond continues running his personal spending

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

through Bene Market, LLC and characterizing the same as business expenses. See Plaintiff's Exhibits 43-48 showing $80,969 for 2017 travel, $71,392 for 2018 travel, and $34,386 for 2019 travel with no testimony that insurance sales require any travel.

80.     Despite the fact that Redmond verified in the Pleadings that Jordan did all sorts of bad acts that he claimed in the Pleadings may have justified Redmond's Freeze Out of Jordan, Redmond failed to provide any witness or any evidence at trial to testify to any of the alleged bad Acts.   Thus, the net effect was that Redmond relied on his unproven pleadings and by serially filing bankruptcy on the eve of trial to create the seven year pendency of this litigation so that he could hold Jordan at arm's length while he drained NBOA's coffers and then moved all assets over to Bene, Market, LLC.

81.     As a result of Redmond's conduct, Jordan has suffered personally and professionally (including being forced to relocate out of state) and the expense over more than seven years in seeking to protect his interests in this matter.

The Court enters the following Verdict:

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

NATIONAL BROKERS OF AMERICA, : IN THE COURT OF COMMON PLEAS
INC., and : BERKS COUNTY, PENNSYLVANIA
ALAN CHRISTOPHER REDMOND, : CIVIL ACTION - LAW
        Plaintiffs, : No. 14-17117
       :
       v. :
       :
JASON SCOTT JORDAN, :
        Defendant : Assigned to Judge Timothy J. Rowley

## **VERDICT SLIP**

The Court finds in favor of Defendant, Jason Scott Jordan and against Plaintiff,

Alan Christopher Redmond.

(1)     Compensatory damages including pre-judgment interest in the amount of

$8,105,197.20.

(2)     Punitive/exemplary damages in the amount of $5,000,000.00.

(3)     Total damage award $13,105,197.20

BY THE COURT:

_____
TIMOTHY J. ROWLEY, J.

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117