**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE:** | **:** |
| | **: CHAPTER 11** |
| **ALAN CHRISTOPHER REDMOND,** | **:** |
| | **: NO. 24-13093(PMM)** |
| Debtor. | **:** |
| | **:** |
| | **:** |
| **JASON SCOTT JORDAN,** | **:** |
| | **:** |
| Plaintiff, | **: ADV. PRO. NO. 24-0145(PMM)** |
| v. | **:** |
| | **:** |
| **ALAN CHRISTOPHER REDMOND,** | **:** |
| | **:** |
| Defendant. | **:** |
| | **:** |

**ALAN CHRISTOPHER REDMOND'S MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FED. R. CIV. P. 56 MADE APPLICABLE TO
<u>THIS PROCEEDING BY FED. R. BANKR. P. 7056</u>**

Alan Christopher Redmond (the "Debtor" or the "Defendant"), by and through undersigned counsel, Ciardi Ciardi & Astin, files the Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056 (the "Motion")[1] and respectfully avers as follows:

**I. STATEMENT OF MATERIAL FACTS**

1. On December 20, 2021, in the Court of Common Pleas of Berks County Pennsylvania, in the case captioned *National Brokers of America, Inc. and Alan Christopher Redmond v. Jason Scott, Case No. 14-17117* (the "State Court Litigation"), a Decision and Verdict (the

---

[1] A Statement of Material Facts is incorporated into the Motion and herein by reference.

"State Court Judgment") was entered against the Defendant in the amount of $13,105,197. *See*

**Exhibit A** (State Court Judgment).

2.       The original counterclaim in the State Court Litigation contained the following counts:

(1) Breach of Contract/Wage Payment and Collection Law, (2) Breach of Contract/Violation

of Shareholder's Agreement, (3) Breach of Contract/Violation of Amended Bylaws, (4)

Breach of Fiduciary Duty to Shareholder, and (5) Appointment of Appraiser to Determine

Fair Value of Corporate Stock. *See* **Exhibit B** ("State Court Counterclaim").

3.       The counterclaim was subsequently amended to include the following count: (6)

Conversion. *See* **Exhibit C** ("State Court Amended Counterclaim").

4.       Count 6 (Conversion) was the only count tried before the Honorable Timothy J.

Rowley. *See* **Exhibit D**[2].   Conversion is defined as the deprivation of another's right of

property in, or use or possession of, a chattel, or other interference therewith, without the

owner's consent and without lawful justification. When such an act occurs, the plaintiff may

bring suit if he had an immediate right to possession of the chattel at the time it was

converted. *Spector Gadon & Rosen, P.C. v. Rudinski, Orso & Lynch*, 2020 PA Super 91, 231

A.3d 923, 925 (2020)(*citing Bank of Landisburg v. Burruss*, 362 Pa.Super. 317, 524 A.2d

896, 898 (1987) (internal citations and quotation marks omitted), *appeal denied*, 516 Pa. 625,

532 A.2d 436 (1987). Money can be the subject of conversion. *Shonberger v. Oswell*, 365

Pa.Super. 481, 530 A.2d 112, 114 (1987).

---

[2] Counts I and II were stayed as the result of the NBOA Bankruptcy, Count III was denied prior to trial by order of the trial court, and Counts IV and V were dismissed by order of the trial court specifically finding there was no fiduciary duty owed to Plaintiff by the Defendant and no appraiser was appointed. *See* **Exhibit D**.

5. On September 3, 2024 (the "Petition Date") an involuntary petition for reorganization under Chapter 11 of title 11 of the United States Code, as amended was filed against the Debtor by the Petitioning Creditors. *See* Docket No. 1.

6. On October 2, 2024, an Order for Relief was entered by the Court. *See* Docket No. 92.

7. On December 6, 2024, the above-captioned adversary proceeding was commenced with the filing of a complaint (the "Adversary Complaint") by the Plaintiff. *See* Adversary Docket No. 1.

8. The Adversary Complaint contains two counts: Count One alleges the State Court Judgment is nondischargeable "under 11 U.S.C. § 523, including Section 523(a)(2)(A) for services obtained by false pretenses, a false representation, or actual fraud; under Section 523(a)(4) as a debt for fraud or defalcation, or both, while acting in a fiduciary capacity, or embezzlement or larceny; and under Section 523(a)(6) for willful and malicious injury to the property of Plaintiff." *See* Adversary Docket No. 1, Para. 9.

9. On March 13, 2025, counsel for the Plaintiff advised counsel for the Debtor of three (3) positions with regard to discovery and a trial in the adversary proceeding:

    a. First, counsel for the Plaintiff advised "[w]e believe everything is subject to issue preclusion, including your client's intent. Notwithstanding the foregoing, we're asking the Court to hold trial on your client's intent only, if the Court hypothetically disagrees with issue preclusion to the extent of your client's intent."

    b. Second, counsel for the Plaintiff confirmed that, "[i]f a trial is held, I intend to admit into the record the 12/20/2021 Decision and Verdict by Judge Rowley

from the Berks County Court of Common Pleas, C.A. No. 14-17117, and I

further intend to call Mr. Redmond to the stand to explain his intent."

c. Finally, counsel for the Plaintiff reserved certain rights in so far as, "[a]lthough

I don't intend to have other documents in my case in chief, I reserve the right

to impeach Mr. Redmond with documents if he claims some sort of pure intent

in what Judge Rowley found."

*See* **Exhibit E**, March 13, 2025, email from Joel A. Ready to Albert A. Ciardi, III.

10.    Similarly, on March 24, 2025, counsel for the Plaintiff advised the Court via letter

filed on the docket that,

> "In essence, our dispute is that Jordan has a final judgment in the Berks County
> Court of Common Pleas, with 15 pages of findings of fact, which amount to
> issue preclusion in this adversary proceeding for non-dischargeability of the
> debt to Jason Scott Jordan. Notwithstanding this issue preclusion, Debtor's
> counsel's discovery is aimed at re-litigating the merits of the underlying case,
> including insisting on a deposition on the underlying facts."

*See* **Exhibit F**, Adversary Docket No. 16.

11.    On January 14, 2025, this Court entered the Amended Pretrial Order providing that all

motions for summary judgment are due to be filed on or before March 28, 2025. *See*

Adversary Docket No. 8.

12.    The Plaintiff has not taken any discovery in this matter and the discovery period has

closed. *Id.*

13.    Defendant served Interrogatories and Requests for the Production of Documents on

the Plaintiff and received the responses (the "Discovery Responses") attached hereto as

**Exhibit G**.

14.     In the Discovery Responses, Plaintiff maintains his position that he will rely upon a single document at the time of trial: the State Court Judgment. *Id.*

15.     The Plaintiff is therefore limited to the record he's identified to Defendant via email, to the Court via letter, and to the Defendant via the Discovery Responses. *Id.*

## II.     SUMMARY OF ARGUMENT

Plaintiff has advised the Defendant and this Court that he intends to rely exclusively on the State Court Judgment at the time of trial and Defendant should be precluded from relitigating the State Court Judgment. *See* **Exhibits A, E and F**.  If Plaintiff is limited to the State Court Judgment by his own admission and decision not to take discovery in this matter, Plaintiff is still wholly unable to meet his burden of proof under section 523(a). Because of the absence of material facts supporting Plaintiff's claims, summary judgment in favor of the Defendant is warranted.

In the alternative and because the issue is central to Plaintiff's position, Defendant does not believe issue preclusion can prevent a trial on the merits in this matter because the State Court Judgment is entirely lacking on the elements of section 523(a)(2), (4) and (6).

## III.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56, incorporated by reference into Bankruptcy Rule 7056, provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Where the parties' dispute is so one-sided that one party must, as a matter of law, prevail, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The movant has the initial burden of proof; then the burden shifts to the respondent to either present affirmative evidence supporting its version of the

5

facts or refute the movant's entitlement to judgment as a matter of law. *Id.* at 256-57; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact that may impact the outcome under applicable substantive law is deemed material, and a dispute over such a fact is genuine if a verdict could be returned in favor of the nonmoving party by a reasonable jury. *See Santini v. Fuentes,* 795 F.3d 410, 416 (3d Cir. 2015) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When a creditor seeks a determination that it holds a nondischargeable debt under 11 U.S.C. § 523(a), it bears the burden of demonstrating nondischargeability by a preponderance of the evidence. *In re Vepuri*, No. ADV 08-0156, 2009 WL 2921305, at *6 (Bankr. E.D. Pa. Mar. 25, 2009), aff'd, No. 09-CV-1901, 2010 WL 1303456 (E.D. Pa. Mar. 31, 2010) (*citing Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *see also In re Graham*, 973 F.2d 1089, 1101 (3d Cir.1992)). Generally, the provisions of section 523(a) are "strictly construed against creditors and liberally construed in favor of debtors," owing to the overriding bankruptcy purpose of granting debtors a fresh start. *Id.* (*citing In re Cohn*, 54 F.3d 1108, 1113 (3d Cir.1995)); *see also Lugo v. Paulsen*, 886 F.2d 602, 611 (3d Cir.1989); *In re Lee*, 2000 WL 815928, at *2 (Bankr.E.D.Pa.2000) *In re Perkins*, 2000 WL 1010580, at *3 (Bankr.E.D.Pa.2000).

Collateral estoppel (a/k/a issue preclusion) applies to nondischargeability issues under … section 523(a)(2), (4), (6) stemming from pre-bankruptcy state court litigation. *Id.* (*citing Grogan v. Garner,* 498 U.S. 279, 284 n. 1, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)); *see In re Graham,* 973 F.2d 1089 (3d Cir.1992); *In re Schlessinger,* 208 Fed. Appx. *131*, 132 (3d Cir.2006) (non-precedential). The preclusive effect of the judgment will be determined by the law of the adjudicating state, in this case, Pennsylvania. *In re Uku, 658 B.R. 812, 817 (Bankr.*

*W.D. Pa. 2024)* The application of collateral estoppel depends upon whether the following

elements are met:

(1)      an issue is identical to one that was presented in a prior case;

(2)      there has been a final judgment on the merits of the issues in the prior case;

(3)      the party against whom the doctrine is asserted was a party in, or in privity with a party in, the prior action;

(4)      the party against whom the doctrine is asserted, or one in privity with the party, had a full and fair opportunity to litigate the issue in the prior proceeding; and

(5)      the determination in the prior proceeding was essential to the judgment.

*See Viener v. Jacobs* (*In re Jacobs*), 381 B.R. 128, 142 & n.23 (Bankr.E.D.Pa. 2008) (noting

that the fifth element is not always included by Pennsylvania and federal decisions applying

the doctrine under Pennsylvania law). *See also Aiello v. Aiello (In re Aiello)*, 533 B.R. 489,

494 n.2 (Bankr.W.D.Pa 2015) (noting that, whether stated as four or five elements, the

doctrine is essentially the same)).

## IV.   ARGUMENT

The only count in the State Court Amended Counterclaim that went to trial before the

trial court judge was Count VI (conversion). *See* **Exhibit D**. There were no allegations of

fraud in the State Court Amended Counterclaim and no findings of fraud or intent in the State

Court Judgment. *See* **Exhibit A, C and D**. While the parties are the same and there is no

dispute that the State Court Judgment is final, it is antithetical to argue that the issues below

are the same issues presented to this Court for the following reasons.

7

**A. Summary Judgment as to Count I of the Complaint is Appropriate because Plaintiff's record fails to establish nondischargeability of the State Court Judgment by a preponderance of the evidence.**

Count I of Plaintiff's Complaint addresses Section 523(a)(2)(A), (4) and (6).  Relying only upon the State Court Judgment, Plaintiff fails to meet its burden of proof as to every aspect and argument contained in Count I.  If summary judgment is granted as to Count I, Count II (a determination of restitutionary damages for consequential gains from misappropriated property) is moot.

**i. The State Court Judgment does not support a finding of nondischargeability under § 523(a)(2)(A).**

To successfully challenge the dischargeability of debt under section 523(a)(2)(A), the creditor must establish that: (1) the debtor made the representations knowing they were false; (2) the debtor made the representations with the intent and purpose of deceiving the plaintiff; (3) the creditor justifiably relied on the debtor's false representations; and (4) the creditor suffered a loss or damage as a proximate consequence of the representation having been made. *In re Vepuri*, No. ADV 08-0156, 2009 WL 2921305, at *10 (Bankr. E.D. Pa. Mar. 25, 2009), aff'd, No. 09-CV-1901, 2010 WL 1303456 (E.D. Pa. Mar. 31, 2010) (*citing Field v. Mans*, 516 U.S. at 61 (1995); *In re Ophaug*, 827 F.2d 340, 342 n. 1 (8th Cir.1987); *In re Maurer*, 112 B.R. 710, 712–13 (Bankr.E.D.Pa.1990)); *see also* In re Hilley, 124 Fed. Appx. 81, 82 (3d Cir.2005) ("Central to a § 523(a)(2)(A) claim is that there must be a misrepresentation.")

Similar to the facts of the case before this Court, in *In re Vepuri*, the Plaintiff relied upon a prior jury verdict and district court judgment to establish the elements of nondischargeability under section 523(a)(2)(A) and Judge Fox found the Plaintiff's collateral

estoppel argument unpersuasive for several reasons. First, the jury in *In re Vepuri* did not find the defendants liable for fraud. *In re Vepuri*, No. ADV 08-0156, 2009 WL 2921305, at *10 (Bankr. E.D. Pa. Mar. 25, 2009).  Second, Judge Fox found that "even if one were to construe the jury instructions and verdict to be unclear on the issue of whether the Vepuris committed fraud, since the jury did conclude that a fraud was indeed committed, such ambiguity would still ***weigh in favor of the defendants*** here as it was [the Plaintiff's] burden to prove nondischargeability by a preponderance of the evidence." *Id.* (*citing In re West*, 339 B.R. 557, 565 (Bankr. E.D.N.Y. 2006) (where the bankruptcy court is unable to determine whether the jury "actually decided" a required element for nondischargeability, court concluded that plaintiffs failed to meet their burden). Finally, Judge Fox found that the jury verdict holding the Vepuris liable for conversion did not fall within the scope of section 523(a)(2)(A) because "the tort of conversion is separate and distinct from fraud, fraud in fiduciary capacity, embezzlement, and larceny." *Id.* (*citing In re Wiles*, 145 B.R. 346, 350 (Bankr. M.D.Fla. 1992).  It was for these reasons that Judge Fox ultimately determined that conversion liability, alone, could not serve to demonstrate dischargeability under section 523(a)(2)(A). *Id.*

In the matter before the Court, the only thing the Plaintiff has is the State Court Judgment based upon civil conversion liability. *See* **Exhibit A**.  Unlike *In re Vepuri*, there are no allegations of fraud in the underlying State Court Amended Counterclaim nor are there any findings of fraud in the State Court Judgment.  Moreover, intent was neither plead nor heard by the trier of fact in the State Court Litigation and is therefore entirely absent from the State Court Judgment.  Even in *In re Vepuri* where fraud was plead, tried, and found to have occurred in connection with the Plaintiff's actions, Judge Fox still found that the ambiguity weighed in favor of the defendants.  In this case, there is no ambiguity, and the Court should

grant summary judgment in favor of the Defendant because there are no facts in the record to support a finding for the Plaintiff under section 523(a)(2)(A).

### ii.   The State Court Judgment does not support a finding of nondischargeability under § 523(a)(4).

Section 523(a)(4) provides several distinct grounds for relief. *In re Uku*, 658 B.R. 812, 817–18 (Bankr. W.D. Pa. 2024) (*citing Larson v. Bayer* (*In re Bayer*), 521 B.R. 491, 500 (Bankr.E.D.Pa. 2014)). A threshold element to a successful action alleging fraud or defalcation under § 523(a)(4) is establishing that the debtor was acting as a fiduciary within the meaning of the Bankruptcy Code. *Id.* Courts have recognized the difficulty in ascertaining whether this threshold requirement is met, especially as the term is to be construed narrowly under § 523(a)(4). *Id.* (*citing T. Levy Assocs., Inc. v. Kaplan* (*In re Kaplan*), 608 B.R. 443, 454-55 (Bankr.E.D.Pa. 2019) (citing *Bayer*, 521 B.R. at 505-06)). For non-dischargeability purposes, a fiduciary relationship is properly found where an express or technical trust is present. *See Bayer*, 521 B.R. at 506. "[I]t is well-established that fiduciary status outside of the bankruptcy context does not *ipso facto* result in fiduciary status for purposes of *Section 523(a)(4).*" *See I.U.P.A.T. Dist. Council No. 57 Combined Funds v. Hawranko* (*In re Hawranko*), 627 B.R. 305, 314 (Bankr.W.D.Pa. 2021). In other words, in *In re Uku*, the Bankruptcy Court found that the mere fact that the State Court found a breach of fiduciary duty was insufficient to meet the Plaintiff's threshold burden to establish that Debtor was acting in a fiduciary capacity under § 523(a)(4). *In re Uku*, 658 B.R. 812, 817–18 (Bankr. W.D. Pa. 2024). Specifically, in *In re Uku*, there was a finding that the "[Debtor] was acting as a fiduciary for [Plaintiff]" by the trial court and the Bankruptcy Court found it wasn't enough to meet Plaintiff's threshold burden under § 523(a)(4).  Here, we have even less than

that.  We have a 15-page State Court Judgment that "adopted nearly all of the Plaintiff's findings of fact" that does *not* touch upon the existence of a fiduciary relationship between the parties to this matter.  *See* **Exhibit A**.  Therefore, summary judgment as to Count I of the Adversary Complaint is warranted because Plaintiff will only offer the State Court Judgment as evidence and it is silent as to whether a fiduciary relationship existed.

The *In re Uku* Court next considered embezzlement and larceny, which do not require the existence of a fiduciary relationship. *Id.* (*citing Kaplan*, 608 B.R. at 456). Beginning with embezzlement, a plaintiff must show: "(1) the debtor was entrusted; (2) with property; (3) of another; (4) which the debtor appropriated for his own use; and (5) with fraudulent intent." *See id.* Larceny is described as the "felonious taking of another's personal property with intent to convert it or deprive the owner of same" and requires a showing of felonious intent. *See Compton v. Moschell* (*In re Moschell*), No. 19-02104-JAD, 2020 WL 5998166, at \*5, 2020 Bankr. LEXIS 2829, at \*12 (Bankr.W.D.Pa. Oct. 9, 2020). Moreover, "[i]t has been observed that a finding of conversion may actually preclude a finding of embezzlement." *See Kaplan,* 608 B.R. at 456-57. The *In re Uku* court ultimately found that while the plaintiff in that case contended that he had claims for embezzlement and larceny, both required a showing of intent that was lacking in the underlying State Court findings. *Id.* "There appears to be no dispute that the underlying claims established in State Court (breach of contract, breach of fiduciary duty, and conversion) do not require a finding of fraudulent or felonious intent." *Id.* However, Plaintiff still maintained that the State Court findings of fact support a finding of fraud or at least provide sufficient circumstantial evidence of fraud in the nondischargeability action. *Id.* The Bankruptcy Court did not agree with the Plaintiff and found that he failed to show that the underlying state court findings and application of collateral estoppel were sufficient to

11

meet his burden to establish nondischargeability of the debt. *Id.* Here, we have no evidence of intent and state court liability for a single count: conversion.  It is for these reasons as well as those found in section (i) and (iii) hereof that summary judgment as to Count I should be granted in favor of the Defendant.  Plaintiff cannot meet his burden of proof by a preponderance of the evidence based upon his proposed record.

### iii.   The State Court Judgment does not support a finding of nondischargeability under § 523(a)(6).

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> (6)      for willful and malicious injury by the debtor to another entity or the property of another entity.

*See* 11 U.S.C. § 523(a). The United States Supreme Court, in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), narrowly defined the phrase "willful and malicious" used in section 523(a)(6). *In re Vepuri*, No. ADV 08-0156, 2009 WL 2921305, at *7–8 (Bankr. E.D. Pa. Mar. 25, 2009), *aff'd,* No. 09-CV-1901, 2010 WL 1303456 (E.D. Pa. Mar. 31, 2010) (*citing Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998)).

The Court limited section 523(a)(6)'s scope to intentional torts:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.,* "reckless" or "negligent," to modify "injury." ... Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, comment a, p. 15 (1964) (emphasis added).

12

*Id.* at 61–62; *see also In re Markowitz,* 190 F.3d 455, 464 (6th Cir.1999).

Consistent with *Geiger,* the Third Circuit Court of Appeals had observed:

> [W]hen Congress required more than recklessness for nondischargeability, it required that the debtor have engaged in conduct more culpable than taking a deliberate action that had a high probability of producing harm.... Rather, for the injury to have been "willed" by the debtor, it must at least have been substantially certain to result from the debtor's act.

*In re Vepuri*, No. ADV 08-0156, 2009 WL 2921305, at *7–8 (Bankr. E.D. Pa. Mar. 25, 2009) (*citing In re Conte,* 33 F.3d 303, 307 (3d Cir.1994)). Accordingly, "[a]n injury is willful and malicious under the Code only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result." *Id.,* at 305. "We hold that actions are willful and malicious within the meaning of § 523(a)(6) if they either have a purpose of producing injury or have a substantial certainty of producing injury." *Id.* at 307; *see, e.g., In re Giarratano,* 358 B.R. 106, 2004 WL 2827138, at *3 (D.Del.2004).

Although section 523(a)(6) requires that the debtor's prepetition conduct fall within the scope of an intentional tort, not all intentional torts are considered willful and malicious. *In re Vepuri*, No. ADV 08-0156, 2009 WL 2921305, at *7–8 (Bankr. E.D. Pa. Mar. 25, 2009) (*citing Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) (cited with approval by *Kawaauhau v. Geiger,* 523 U.S. at 63–64); *In re Schlessinger,* 208 Fed. Appx. at 134 ("Moreover, not all intentional torts are willful and malicious.") (citing *Davis*)). As explained by one bankruptcy court,

> [t]he Supreme Court never categorically stated that all intentional torts were exempt from discharge under § 523(a)(6). Rather, it did the contrary. It emphasized that those intentional torts within the contemplation of (a)(6) were where the actor intends the consequences of his act, i.e. intentional injury, and not simply the act itself.

*Id. (citing In re Cantu,* 400 B.R. 104, 2008 WL 5459834, at \*4 (Bankr.S.D.Tex. Nov.26,

2008)).

In addition, section 523(a)(6) requires a finding of both willful and malicious injury.

*Id.* (*citing In re Barboza,* 545 F.3d 702, 706 (9th Cir .2008)). While *Geiger* explained the

meaning of "willful injury," for the purpose of section 523(a)(6), a malicious injury involves

"(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done

without just cause or excuse." *In re Barboza,* 545 F.3d at 706 (internal quotation omitted); *see*

*In re Jacobs,* 381 B.R. 128, 136 (Bankr.E.D.Pa.2008) (malice requirement refers to injuries

that are wrongful and without just cause or excuse, even in the absence of personal hatred,

spite or ill-will); *In re Lucotch,* 342 B.R. 469, 473 (Bankr.W.D.Pa.2006) (same).

In *In re Vepuri*, No. ADV 08-0156, 2009 WL 2921305, at \*7–8 (Bankr. E.D. Pa. Mar.

25, 2009), Judge Fox noted that, "[i]ndeed, one appellate court has concluded that section

523(a)(6) was enacted by the Bankruptcy Reform Act of 1978 to overrule decisions that held

conversion debts nondischargeable in all instances:

> In fact, by adopting the requirement that the conversion be willful and malicious, Congress expressly overruled prior caselaw that had refused dischargeability when the conversion occurred innocently or recklessly. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5963, 6320–21 ("reckless disregard" standard of *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902), and progeny, which refused dischargeability to conversions recklessly done, overruled); *see also* 3 *Collier on Bankruptcy* ¶ 523.16[3] (L. King 15th ed.1984) (conversion without conscious intent to violate rights of another or under mistake or misapprehension is dischargeable even though debtor acted recklessly).

*Id.* (*citing In re Held,* 734 F.2d 628, 629–30 (11th Cir.1984)). As previously discussed, Judge

Fox found that the Vepuris, despite being liable for conversion (an intentional tort), the

district court conversion verdict against them did not necessarily include all of the elements

14

required to establish nondischargeability under section 523(a)(6). *Id.*; *see In re held,* 734 F.2d at 630 ("Since the state court award of punitive damages did not necessarily decide the question of willfulness and malice, principles of collateral estoppel did not preclude the bankruptcy court from considering whether the conversion was willful and intentional under section 523(a)(6) so as to deny dischargeability to the judgment.").  Here, there is a State Court Judgment of liability for civil conversion against the Defendant without a finding of intent or malice.  Plaintiff fails to meet its burden of proof under section 523(a)(6) and this Court should grant summary judgment in favor of the Defendant.

## V.      CONCLUSION

WHEREFORE, for the reasons set forth herein, Alan C. Redmond respectfully requests this Court grant the Motion, enter judgment the Defendant's favor, and grant such other relief as is appropriate.

Respectfully Submitted,

CIARDI CIARDI & ASTIN

Dated:  March 28, 2025                    By:      */s/ Albert A. Ciardi, III*
Albert A. Ciardi, III, Esquire
Nicole M. Nigrelli, Esquire
Jennifer C. McEntee, Esquire
1905 Spruce Street
Philadelphia, PA 19103
215 557 3550
215 557 3551 (fax)
aciardi@ciardilaw.com
nnigrelli@ciardilaw.com
jcranston@ciardilaw.com