**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ALAN CHRISTOPHER REDMOND | Bankruptcy No. 24-13093-PMM |
| | Involuntary Chapter 11 |
| Jason Scott Jordan,<br><br>                    Plaintiff<br><br>v.<br><br><br>Alan Christopher Redmond,<br><br>                    Defendant | Adv. No. 24-0145 (PMM) |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND FOR RULE 56(f)(1) RELIEF**

Plaintiff, Jason Scott Jordan, hereby submits this Brief in opposition to Defendant's Motion

for Summary Judgment at ECF No. 18 and for other relief, namely, summary judgment for the

nonmovant under Fed. R. Civ. P. 56(f)(1).

**STATEMENT OF FACTS**

I.      **Defendant's Statement and Plaintiff's Response.**

**Standing Objections**:

(1) Plaintiff objects to each and every factual statement of the Defendant under relevance

and issue preclusion as stated under Grogan v. Garner, 498 U.S. 279 (1991) and Beard Research,

Inc. v. Kates (*In re* Kates), 485 B.R. 86, 101 (Bankr. E.D. Pa. 2012) to the extent the statements

differ from Judge Rowley's December 12, 2021 Decision and Verdict at Docket No. 14-17117,

Berks County Court of Common Pleas, and provided to this Court on the docket at ECF No. 2.

(2) Plaintiff objects to each and every factual statement of the Defendant to the extent the

same constitute legal conclusions.

1

| No. | Defendant's Statement | Plaintiff's Response |
|---|---|---|
| 1 | On December 20, 2021, in the Court of Common Pleas of Berks County Pennsylvania, in the case captioned National Brokers of America, Inc. and Alan Christopher Redmond v. Jason Scott, Case No. 14-17117 (the "State Court Litigation"), a Decision and Verdict (the "State Court Judgment") was entered against the Defendant in the amount of $13,105,197. See Exhibit A (State Court Judgment) | Admitted in part and denied in part. The judgment consists of $13,105,197.**20**, being compensatory damages of $8,105,197.20 and **punitive damages** of $5,000,000.00. The balance is admitted. |
| 2 | The original counterclaim in the State Court Litigation contained the following counts: (1) Breach of Contract/Wage Payment and Collection Law, (2) Breach of Contract/Violation of Shareholder's Agreement, (3) Breach of Contract/Violation of Amended Bylaws, (4) Breach of Fiduciary Duty to Shareholder, and (5) Appointment of Appraiser to Determine Fair Value of Corporate Stock. See Exhibit B ("State Court Counterclaim") | Objection to relevance and issue preclusion: At trial, Judge Rowley conformed the pleadings to the evidence [Exhibit 6, Transcript at 346:16-20], rendering all pretrial pleadings irrelevant. Judge Rowley determined that Defendant froze Jordan out of the business and "misappropriated" $15,496,492.00 as breach of fiduciary duty, of which half of that amount belonged to Jordan. [ECF No. 2, Decision and Verdict ¶ 78; see also, id. ¶ 29]. <br><br> Without waiving the foregoing objections, admitted. |
| 3 | The counterclaim was subsequently amended to include the following count: (6) Conversion. *See* **Exhibit C** ("State Court Amended Counterclaim"). | Subject to the same objection in No. 2, incorporated by reference, admitted. |

| 4 | Count 6 (Conversion) was the only count tried before the Honorable Timothy J. Rowley. *See* **Exhibit D**[2]. Conversion is defined as the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification. When such an act occurs, the plaintiff may bring suit if he had an immediate right to possession of the chattel at the time it was converted. *Spector Gadon & Rosen, P.C. v. Rudinski, Orso & Lynch*, 2020 PA Super 91, 231 A.3d 923, 925 (2020)(*citing Bank of Landisburg v. Burruss*, 362 Pa.Super. 317, 524 A.2d 896, 898 (1987) (internal citations and quotation marks omitted), *appeal denied*, 516 Pa. 625, 532 A.2d 436 (1987). Money can be the subject of conversion. *Shonberger v. Oswell*, 365 Pa.Super. 481, 530 A.2d 112, 114 (1987).<br><br>[2] Counts I and II were stayed as the result of the NBOA Bankruptcy, Count III was denied prior to trial by order of the trial court, and Counts IV and V were dismissed by order of the trial court specifically finding there was no fiduciary duty owed to Plaintiff by the Defendant and no appraiser was appointed. *See* **Exhibit D**. | Subject to the same objection in No. 2, denied. Defendant patently misinterprets Judge Rowley's Order filed on Apr. 13, 2018. Judge Rowley never dismissed Jordan's Breach of Fiduciary Duty claim (Counterclaim IV) but simply ruled that Redmond did not owe a fiduciary duty to Jordan *solely by reason of being* "a 50% shareholder to another 50% shareholder." [See ECF No. 18-5 at 23]. But Judge Rowley found at trial that Redmond (1) was also a *Director* of National Brokers of America, Inc. (NBOA) and (2) had "equal authority in the management of NBOA." [ECF No. 2, Decision and Verdict ¶¶ 14, 21]. Redmond, therefore, owed fiduciary duties to Jordan in those capacities as a director and corporate officer. Jordan fully briefed that issue to Judge Rowley before the Verdict was rendered. Jordan briefed, "As an officer of NBOA, Redmond stood in a fiduciary relationship to NBOA and its shareholder, Jordan, and owed a duty to perform his duties as an officer in good faith." [Exhibit 1, Conclusions of Law ¶ 3 (Dec. 3, 2021)]. Judge Rowley authorized Jordan's submission. [Exhibit 2].<br><br>Judge Rowley realized that a tort was committed in the performance of a contract and the pleadings were there amended to conform to the evidence. [Exhibit 6, Transcript at 346:16-20].<br><br>Additionally, none of the Counterclaims were "stayed" as applied to Alan Christopher Redmond. This Court lifted the stay as to all claims against Redmond. [ECF No. 18-5 at 26, Order ¶ 5]. |

3

| 5 | On September 3, 2024 (the "Petition Date") an involuntary petition for reorganization under Chapter 11 of title 11 of the United States Code, as amended was filed against the Debtor by the Petitioning Creditors. See Docket No. 1. | Admitted. |
|---|---|---|
| 6 | On October 2, 2024, an Order for Relief was entered by the Court. *See* Docket No. 92. | Admitted. |
| 7 | On December 6, 2024, the above-captioned adversary proceeding was commenced with the filing of a complaint (the "Adversary Complaint") by the Plaintiff. *See* Adversary Docket No. 1. | Admitted. |
| 8 | The Adversary Complaint contains two counts: Count One alleges the State Court Judgment is nondischargeable "under 11 U.S.C. § 523, including Section 523(a)(2)(A) for services obtained by false pretenses, a false representation, or actual fraud; under Section 523(a)(4) as a debt for fraud or defalcation, or both, while acting in a fiduciary capacity, or embezzlement or larceny; and under Section 523(a)(6) for willful and malicious injury to the property of Plaintiff." *See* Adversary Docket No. 1, Para. 9 | Admitted. |
| 9 | On March 13, 2025, counsel for the Plaintiff advised counsel for the Debtor of three (3) positions with regard to discovery and a trial in the adversary proceeding: | Admitted. |
| 9(a) | First, counsel for the Plaintiff advised "[w]e believe everything is subject to issue preclusion, including your client's intent. Notwithstanding the foregoing, we're asking the Court to hold trial on your client's intent only, if the Court hypothetically disagrees with issue preclusion to the extent of your client's intent." | Admitted. |

| | | |
|---|---|---|
| 9(b) | Second, counsel for the Plaintiff confirmed that, "[i]f a trial is held, I intend to admit into the record the 12/20/2021 Decision and Verdict by Judge Rowley from the Berks County Court of Common Pleas, C.A. No. 14-17117, and I further intend to call Mr. Redmond to the stand to explain his intent." | Admitted. |
| 9(c) | Finally, counsel for the Plaintiff reserved certain rights in so far as, "[a]lthough I don't intend to have other documents in my case in chief, I reserve the right to impeach Mr. Redmond with documents if he claims some sort of pure intent in what Judge Rowley found." <br><br> *See* **Exhibit E**, March 13, 2025, email from Joel A. Ready to Albert A. Ciardi, III. | Admitted. |
| 10 | Similarly, on March 24, 2025, counsel for the Plaintiff advised the Court via letter filed on the docket that, <br><br> "In essence, our dispute is that Jordan has a final judgment in the Berks County Court of Common Pleas, with 15 pages of findings of fact, which amount to issue preclusion in this adversary proceeding for non-dischargeability of the debt to Jason Scott Jordan. Notwithstanding this issue preclusion, Debtor's counsel's discovery is aimed at re-litigating the merits of the underlying case, including insisting on a deposition on the underlying facts." <br><br> *See* **Exhibit F**, Adversary Docket No. 16 | Admitted. |
| 11 | On January 14, 2025, this Court entered the Amended Pretrial Order providing that all motions for summary judgment are due to be filed on or before March 28, 2025. *See* Adversary Docket No. 8. | Admitted. |
| 12 | The Plaintiff has not taken any discovery in this matter and the discovery period has closed. *Id.* | Admitted. |

| 13 | Defendant served Interrogatories and Requests for the Production of Documents on the Plaintiff and received the responses (the "Discovery Responses") attached hereto as **Exhibit G** | Admitted. |
|---|---|---|
| 14 | In the Discovery Responses, Plaintiff maintains his position that he will rely upon a single document at the time of trial: the State Court Judgment. *Id.* | Denied, per No. 9(c)—Jordan may impeach Defendant at trial with any document. |
| 15 | The Plaintiff is therefore limited to the record he's identified to Defendant via email, to the Court via letter, and to the Defendant via the Discovery Responses. *Id.* | Denied per Fed. R. Civ. P. 26(a), incorporated by reference by Fed. R. Bankr. P. 7026. Impeachment evidence does not have to be identified or disclosed in discovery. |

## II.     Plaintiff's Supplemental Statement of Facts.

16.     In Exhibit 3, the Court may judicially notice a true and correct copy of the docket at 14-17117 in the Berks County Court of Common Pleas (the "underlying action").

17.     On November 29, 2023, and in a published opinion at 307 A.3d 1206, the Superior Court of Pennsylvania affirmed the judgement in the underlying action.

18.     On November 19, 2024, at Docket No. 135 MAL 2024, the Supreme Court of Pennsylvania denied Defendant's Petition for Allowance of Appeal in the underlying action.

19.     Exhibit 4 is a true and correct copy of a transcript of the deposition of Jason Scott Jordan at Case No. 24-13093.

20.     On February 5, 2025, in Plaintiff's Rule 26(f) Report, "Plaintiff requests the Court hold a discovery conference with counsel for the parties." [ECF No. 12 at 4].

21.     The Court may notice Defendant's Rule 26(f) Report at ECF No. 13.

22.     Exhibit 5 is a true and correct copy of an e-mail from Defendant's counsel, requesting to depose Jason Scott Jordan and seeking written discovery as including Jordan's "statements to insurance regulations and his prior criminal convictions as those are material credibility issues and

we will most likely include direct discovery on several of the regulatory agencies directly in order to confirm what Jordan has submitted."

23.     Defendant's Rule 26(a) Disclosures designated all exhibits or documents produced or used in National Brokers of America and Redmond v. Jordan, C.A. No. 14-17117. [ECF No. 13 at 2].

24.     Offered for purposes of the law of the case and in rebuttal to Defendant's Motion for Summary Judgment, Exhibit 6 contains relevant portions of the trial transcript on September 21, 2021, C.A. No. 14-17117, Berks County Court of Common Pleas, where Judge Rowley conformed the pleadings to the evidence.

25.     In Jordan's Amended Proof of Claim, No. 8-2, postjudgment interest is computed as $2,123,041.95 from the date of Judge Rowley's verdict through September 3, 2024. Debtor offers no rebuttal to such computation.

26.     The Court may judicially notice that, under Pennsylvania substantive law, postjudgment interest is fixed at 6% per year, accruing from the date of the verdict, and Jordan is entitled to a computation that includes fractions of years. 41 P.S. § 202 (legal rate of interest); 42 Pa.C.S. § 8101 (imposition of postjudgment interest); Keating-Reichwein v. Universal Companies, 2015 U.S. Dist. LEXIS 31662, at *14 n.6 (E.D. Pa. Mar. 13, 2015) (interest includes fractions of years).

### STANDARD OF REVIEW.

Summary judgment is due, in whole or in part, where there is no genuine issue of material fact. Fed. R. Civ. P. 56(a). The record and all inferences drawn therefrom must be viewed in a light most favorable to the nonmovant. United States v. Diebold, 369 U.S. 654, 655 (1962). Summary judgment cannot be avoided through "some metaphysical doubt" on the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

### ARGUMENT.

The Court is called upon to decide if Judge Rowley's decision and final judgment in the Berks County Court of Common Pleas, C.A. No. 14-17117 (the "underlying action"), come within the scope of nondischargeability under the Bankruptcy Code. Chapter 11 proceedings under the Code incorporate by reference the same exceptions to dischargeability as provided under Section 523. 11 U.S.C. § 1141(d)(2).

**I.      Summary Judgement is Due for Jordan on Count I.**

Count I of the Complaint seeks nondischargeability in respect of Jordan's final judgment of $13,105,197.20 in the underlying action together with all postjudgment interest. [ECF No. 1 ¶¶ 1-9]. Under Grogan v. Garner, 498 U.S. 279 (1991), the doctrine of issue preclusion is applicable to the question of nondischargeability under 11 U.S.C. § 523(a). Where, as here, the State court made findings of fact, such "findings are entitled to the same preclusive effect in this Court as they would receive" in the State court. Beard Research, Inc. v. Kates (*In re* Kates), 485 B.R. 86, 101 (Bankr. E.D. Pa. 2012). The Bankruptcy Court is therefore presented with a question of law whether those findings of fact by Judge Rowley in the underlying action [ECF No. 2] satisfy the applicable Code provisions for nondischargeability. As shown below, they do. Judge Rowley found that Debtor misappropriated $15,496,492 in corporate funds, of which half belonged to Jordan. [ECF No. 2, Ex. A ¶ 78]. In awarding compensatory damages, Judge Rowley divided that figure in half and then added prejudgment interest, for a total of $8,105,197.20. [ECF No. 2 at 17]. Judge Rowley then awarded punitive damages of $5,000,000.00. [Id.].

Through the petition date of September 3, 2024, Debtor accrued $2,123,041.95 in postjudgment interest under Pennsylvania law. Under Pennsylvania law, postjudgment interest accrues at 6% per year. 41 P.S. § 202 (legal rate of interest); 42 Pa.C.S. § 8101 (imposition of postjudgment interest); Keating-Reichwein v. Universal Companies, 2015 U.S. Dist. LEXIS

31662, at *14 n.6 (E.D. Pa. Mar. 13, 2015) (interest includes fractions of years). "For purposes of computing interest, judgment and verdict are synonymous, and the date from which interest accrues is the date of the verdict, not the date judgment is finally entered." Young v. Lippl, 251 A.3d 405, 423 (Pa.Super. 2021) (quotation omitted).

    **A.**     **Fraud or Defalcation while Acting in a Fiduciary Capacity, Embezzlement, or Larceny (Section 523(a)(4)).**

    **1.**     **Embezzlement.**

The Code excepts dischargeability in respect of a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). "[T]he existence of a fiduciary relationship is not required for the non-dischargeability of a debt owing to larceny or embezzlement." T. Levy Assocs. v. Kaplan (*In re* Kaplan), 608 B.R. 443, 456 (Bankr. E.D. Pa. 2019). Embezzlement "requires conversion." Bullock v. BankChampaign, N.A., 569 U.S. 267, 275 (2013). "Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." Schlessinger v. Schlessinger (*In re* Schlessinger), 208 F. App'x 131, 133 (3d Cir. 2006) (citation omitted). "It differs from larceny in the fact that the original taking of the property was lawful or with the consent of the owner, while in larceny the felonious intent must existed at the time of the taking." *In re* Spector, 133 B.R. 733, 741 (Bankr. E.D. Pa. 1991) (quotation omitted).

A State court's finding that the debtor engaged in "misappropriation" is sufficient for issue preclusion under 11 U.S.C. § 523(a)(4) as to embezzlement. *In re* Feng Li, 610 F. App'x 126, 129 (3d Cir. 2015). "Misappropriation" means "[t]he application of another's property or money dishonestly to one's own use. **See EMBEZZLEMENT**." BLACK'S LAW DICTIONARY 1148 (10th ed. 2014) (emphasis added) [Exhibit 7]. The terms, embezzlement and misappropriation, are therefore synonyms. Id. Pennsylvania substantive law is in accord. Persons "can be convicted of an

*embezzlement*-type offense if he or she *misappropriates* funds for a use inconsistent with the purpose for which the funds are held." Commonwealth v. Coward, 478 A.2d 1384, 1387 (Pa.Super. 1984) (discussing 18 Pa.C.S. § 3927 (emphasis added)). The semantic meaning of *misappropriate* is nothing less.

In Feng Li, a New Jersey attorney was disbarred for transferring $3.5 million in his client's IOLTA account to unauthorized recipients in the People's Republic of China. Feng Li, 610 F. App'x at 128. The money was transferred there "to settle personal debts" of the attorney. Id. at 130. The U.S. Court of Appeals for the Third Circuit agreed that Section 523(a)(4) of the Code was satisfied under issue preclusion and affirmed the decision of the bankruptcy court. Id. at 129.

In the underlying action, Judge Rowley found that Debtor and Jason Scott Jordan were both shareholders of National Brokers of America, Inc. ("NBOA"), each owning 50% of the equity, and were directors and "officers" having equal managerial authority. [ECF No. 2, Ex. A ¶¶ 11-13, 22]. Jordan never resigned and was never lawfully removed from his roles as director and shareholder. [Id. ¶¶ 13, 20]. "From November 2013 until August 2014, Redmond and Jordan took equal pay, took equal distributions, acted at all times as having equal authority in the management of NBOA. They were the only shareholders, and were the only directors." [Id. ¶ 21].

Debtor then froze out Jordan from his management rights in NBOA in 2014. [ECF No. 2, Ex. A ¶¶ 28-29]. After this occurred, Judge Rowley made 16 findings that Debtor "misappropriated" money and services from NBOA without paying over 50% to Jordan. [Id. ¶¶ 56, 58-60, 65-66, 70, 72-76, 78]. Debtor created "an identical business, Bene Market, LLC," and transferred NBOA's book of business, remaining capital, equipment, and employees to Bene Market, LLC. [Id. ¶¶ 59, 60, 70]. Debtor ran his personal expenses through these businesses, which amounted to $604,126.45 in expenditures as well as $116,738.60 in cash disbursements to himself

and $56,000 in wire transfers to his mother, Maria Redmond. [Id. ¶¶ 51-52, 55, 57]. "Thus, the sum of money that Redmond misappropriated from NBOA and Bene Market, LLC, ***and did not share with Jordan***, equals $15,496,492." [Id. ¶ 78 (emphasis added)]. In so finding, Judge Rowley recognized the economic realities of what happened, where Debtor had thrown out any semblance of corporate formality and treated NBOA and Bene Market, LLC as his personal piggybanks.

For embezzlement, Debtor argues "we have no evidence of intent and state court liability for a single count: conversion." [ECF No. 18 at 12]. Debtor misunderstands the law of the case, as shown in Subpart B, but the assertion there was no intent is incorrect. Besides Debtor's intent being subsumed within the meaning of "misappropriation" itself, Judge Rowley additionally found that Debtor acted with the intent to "keep all benefits of NBOA solely for himself." [ECF No. 2, Ex. A ¶ 48]. Judge Rowley further found that Debtor made serial bankruptcy petitions for NBOA "on the eve of trial" in the underlying action "to create the seven year pendency of this litigation so that he could hold Jordan at arm's length while he drained NBOA's coffers and then moved all assets over to Bene, Market, LLC." [Id. ¶ 80]. Debtor had lawful possession or control of these corporate funds (but not title) through the ordinary course of business, but afterwards took the money dishonestly to his own use by freezing Jordan out of the business without authority and depriving Jordan of his equal share. During the pendency of the underlying action, Debtor continued the same wrongful conduct. Thus, subsumed within Judge Rowley's findings of misappropriation of Jordan's 50% share and having the intent to keep the same solely for himself, the Decision and Verdict in the underlying action conform with the embezzlement standard in Section 523(a)(4) of the Code. The Third Circuit's decision in Feng Li, therefore, is directly on point. It makes no difference that Feng Li was an attorney whereas Redmond was a corporate officer and director. The outcome is the same.

### 2.   Defalcation while Acting in a Fiduciary Capacity.

While the Court may resolve this under the standard of embezzlement, it bears mention that "[a] corporate officer is a 'fiduciary' of a corporation within the meaning of § 523(a)(4)." Assurance Sys. Corp. v. Jackson (*In re* Jackson), 141 B.R. 909, 915 (Bankr. N.D. Tex. 1992). "The fiduciary (debtor) must hold an express or technical trust on behalf of the beneficiary (creditor)." Int'l Fidelity Co. v. Marques (*In re* Marques), 358 B.R. 188, 194 (Bankr. E.D. Pa. 2006). "Even though a § 523(a)(4) fiduciary relationship is a question of federal law, state law is also an important factor in deciding a trust relationship exists." Assurance Sys. Corp., 141 B.R. at 915. "The relationship of officers and directors to the corporation is such that a constructive trust is imposed upon them." Id. Pennsylvania substantive law is in accord. Weissman v. A. Weissman, Inc., 97 A.2d 870, 872 (Pa. 1953) (corporate opportunities and self-interested transactions "are subject to a constructive trust for the benefit of the corporation."). As a fiduciary subject to the duties of good faith and loyalty, Debtor was "held to something stricter than the morals of the marketplace." Clement v. Clement, 260 A.2d 728, 729 (Pa. 1970).

Consequently, Debtor was a fiduciary for purposes of Section 523(a)(4) by reason of acting in his capacity as corporate officer and director. His conduct also satisfies the standard for "defalcation," which requires "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." Bullock v. BankChampaign, N.A., 569 U.S. 267, 269 (2013). The aforementioned findings by Judge Rowley satisfy that as well. Upon Jordan's counterclaim in the underlying action, Debtor took no action to rectify his wrongful conduct but, instead, dragged the proceeding out for seven years while draining NBOA's assets.

Debtor makes much of Knoll v. Uku (*In re* Uku), 658 B.R. 812 (Bankr. W.D. Pa. 2024). There, the court declined to decide whether the facts satisfied the fiduciary capacity standard because the plaintiff "does not offer any citation to Pennsylvania law regarding how such status

12

alone satisfies the elements of a trust to meet the fiduciary capacity requirement of § 523(a)(4),"

and the Court denied the motion for summary judgment due to inadequate briefing. Id. at 818. For

purposes of embezzlement, the *Knoll* Court further held that the State court's findings on intent

were "lacking." Id. at 819. Such a narrow holding does not offer any guidance here and is

nonresponsive to the findings of Judge Rowley, discussed above.

### B.    Debtor Misstates the Law of the Case.

Debtor argues that only a claim of conversion was presented before Judge Rowley for a

decision on the merits. Not so. First, the Court will observe that nowhere in Judge Rowley's

Decision do the words "conversion" or "convert" appear. Rather, as shown above, the operative

finding by Judge Rowley is "misappropriation," which sounds under a claim of breach of fiduciary

duty. See, e.g., McRoberts v. Phelps, 138 A.2d 439, 446 (Pa. 1958).

During trial in the underlying action on November 21, 2021, Jordan was represented by the

late David W. Crossett, Esquire. At the close of the case in chief, Attorney Crossett moved the

Court:

> Mr. Crossett:   I always move to conform the pleadings to the evidence presented.
> So I would  move for that kind of formality. But we presented evidence. I move to
> have that conformed.
>
> The Court:     All right. Granted.

[Exhibit 6, Tr. at 346:16-20]. Debtor's counsel had no objection. [See id.]. As a result, Judge

Rowley was not bound by any pretrial ruling and was free to find liability on any and all grounds

that the evidence supported.

Debtor further mischaracterizes Judge Rowley's pretrial orders. As shown in our Response

to Fact No. 3, cited above, Judge Rowley's April 13, 2018 Order went no further than to rule that

Debtor did not owe a fiduciary duty to Jordan solely by reason of being "a 50% shareholder to

another 50% shareholder." [See ECF No. 18-5 at 23]. Thus, Judge Rowley never dismissed

Jordan's claim of Breach of Fiduciary Claim in toto and left intact Debtor's fiduciary liability as a director and corporate officer. Jordan fully briefed that issue to Judge Rowley before the Verdict was rendered. Jordan briefed, "As an officer of NBOA, Redmond stood in a fiduciary relationship to NBOA and its shareholder, Jordan, and owed a duty to perform his duties as an officer in good faith." [Exhibit 1, Conclusions of Law ¶ 3 (Dec. 3, 2021)]. Judge Rowley authorized Jordan's submission. [Exhibit 2]. Pennsylvania law recognizes corporate officers and directors as owing fiduciary duties to shareholders. Santoro v. Morse, 781 A.2d 1220, 1232 (Pa.Super. 2001) (injunctive relief proper "in light of the fiduciary duty owed by appellant to the corporation and its shareholders."); Bailey v. Jacobs, 189 A. 320, 323 (Pa. 1937) ("Directors and officers occupy toward stockholders what is commonly characterized as a fiduciary relationship. They must act in the utmost of good faith, and cannot deal with the funds and property of the corporation, nor utilize the influence and advantage of their offices, for any but the common interest.").

Significantly, Debtor offers no argument why Section 523(a)(4) of the Code is not satisfied here whether Jordan's claim was conversion or breach of fiduciary duty. A defendant can violate "his fiduciary duty to the corporation and its stockholders by misappropriating and converting corporate assets to his own personal use." ProPhase Labs v. Quigley, 2014 Pa. Dist. & Cnty. Dec. LEXIS 132, at *30 (C.P. Bucks Mar. 5, 2014). If the distinction was that conversion does not require a finding of fraudulent intent, that makes no difference where, as here, Judge Rowley so found that Debtor misappropriated funds for his own benefit as described in Subpart A, supra. Debtor's argument to the contrary fails.

> **C.   Willful and Malicious Injury by the Debtor to Another Entity or to the Property of Another Entity (Section 523(a)(6)).**

The Code excepts dischargeability in respect of a debt "for willful and  malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

14

As a matter of cognitive dissonance, Debtor argues to the Court that he did not intend to willfully harm Jordan after freezing him out of the business and misappropriating $15,496,492. A person intends the natural and probable consequences of his actions and Judge Rowley found the intentional, fraudulent intent in the findings of "misappropriation." [Subpart A, supra]. Judge Rowley found that Debtor's conduct was not reckless but that he intended to "keep all benefits of NBOA solely for himself," which is intentional. [ECF No. 2, Ex. A ¶ 48]. Judge Rowley further found a specific intent to harm Jordan. Notwithstanding the suit, "Redmond relied on his unproven pleadings and by serially filing bankruptcy on the eve of trial to create the seven year pendency of this litigation so that he could hold Jordan at arm's length while he drained NBOA's coffers and then moved all assets over to Bene, Market, LLC." [ECF No. 2, Ex. A, Decision ¶ 80]. Judge Rowley, as mentioned, awarded $5,000,000.00 in punitive damages, finding such standard to be met. [ECF No. 2 at 17].

Freezing Jordan out of the business and taking money that Jordan was entitled to have as of right, and for Debtor's own benefit, are wrongful acts and with substantial certainty of producing injury. Judge Rowley further found that Debtor had no just cause or excuse. Where, as here, the breach of fiduciary duty involves misappropriating corporate assets into a new, competing company, "These findings undoubtedly equate to a determination that the Debtor acted willfully and maliciously (in the sense of §523(a)) to injure" another. Beard Research, Inc. v. Kates (*In re Kates*), 485 B.R. 86, 110 (Bankr. E.D. Pa. 2012). Once again, it makes no difference whether the tort found by Judge Rowley was conversion or breach of fiduciary duty. Under the 1978 House Report for Section 523, "The phrase 'willful and malicious' covers a willful and malicious conversion." Hist. & Revision Notes, 11 U.S.C. § 523; 4 COLLIER ON BANKRUPTCY ¶ 523.12. Debtor recites Barboza v. New Form, Inc. (*In re* Barboza), 545 F.3d 702, 707 (9th Cir. 2008) that

15

an act must be intentional, but the Third Circuit clarified that the standard requires "wrongful actions taken with substantial certainty of producing injury." Conte v. Gautam (*In re* Conte), 33 F.3d 303, 308 (3d Cir. 1994). Whether there's a dime's worth of difference between those standards or not, Judge Rowley's findings certainly satisfy both.

Therefore, as a matter of issue preclusion, Debtor cannot defend this proceeding on the basis that he had a pure heart and an empty mind.

**D.      If a "Debt" is Nondischargeable, then It Embraces All Punitive Damages and Prejudgment and Postjudgment Interest.**

Exceptions to discharge are applicable to "any debt" which satisfy any of the exceptions in Section 523(a). Looking at the statutory definitions of "debt" and "claim," 11 U.S.C. § 101(5)(A) & (12), the U.S. Supreme Court agreed it is "a right to payment" as "an enforceable obligation." Cohen v. De La Cruz, 523 U.S. 213, 218 (1998) (citations omitted). In context of money obtained by fraud (Section 523(a)(2)), the Court agreed that if State law awards treble damages, then nondischargeability embraces the entire judgment: "An award of treble damages is an 'enforceable obligation' of the debtor, and the creditor has a corresponding 'right to payment.'" Id. The Court clarified that "debt" within the Code "encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor." Id. at 223. Also, "an award of punitive damages" in the State court action "plainly fits in the category of 'judgments in actions for fraud.'" Id. at 221.

Following the direction of Cohen, bankruptcy courts agree that "other relief" within the debt embraces prejudgment and postjudgment interest: "Therefore, generally, attorneys' fees and interest accompanying a nondischargeable primary award of compensatory damages are likewise nondischargeable." Novartis Pharm. Corp. v. Adesanya (*In re* Adesanya), 613 B.R. 808, 835

16

(Bankr. E.D. Pa. Mar. 24, 2020). Likewise, the debt includes punitive damages under Cohen. Vaks v. Grenier (*In re* Grenier), 2009 Bankr. LEXIS 655, at *28 (Bankr. D. Mass. Mar. 19, 2009).

Accordingly, the punitive damages award of $5,000,000.00 and the prejudgment and postjudgment interest arising from the underlying judgment are a direct result from the debt and nondischargeable for the same reasons as the debt. Punitive damages, here, are independently nondischargeable even if the standard in Section 523(a)(6) is hypothetically not established.

**E.      Debtor Cannot Read the Record in a Light Most Favorable to Himself That He Had a Pure Heart but an Empty Head.**

Debtor raised no defense other than his intent. While we believe that Judge Rowley's findings are preclusive, the Court should find in the alternative that summary judgment is not due to the Debtor. If there is a triable issue of fact, then the Court's review is de novo and is "not required to limit its review to the state court record." Schlessinger v. Schlessinger (*In re* Schlessinger), 208 F. App'x 131, 133 (3d Cir. 2006); Barboza v. New Form, Inc. (*In re* Barboza), 545 F.3d 702, 706 (9th Cir. 2008) (de novo review applicable). If issue preclusion does not apply, then it will not "preclude the bankruptcy court from considering whether the conversion was willful and intentional under section 523(a)(6) so as to deny dischargeability to the judgment." *In re* Held, 734 F.2d 628, 630 (11th Cir. 1984). Because the record must be read in a light most favorable to the non-movant at summary judgment, "this is not a search for subjective good faith" of the tortfeasor "— a pure heart and an empty head are not enough." Donovan v. Cunningham, 716 F.2d 1455, 1467 (5th Cir. 1983), followed in, Sweda v. Univ. of Pennsylvania, 923 F.3d 320, 329 (3d Cir. 2019). "A finder of fact is not bound by an actor's stated intention but may find that he intended the natural and probable consequences of his act." Commonwealth v. Thomas, 350 A.2d 847, 849 (Pa. 1976).

Here, the Debtor did not take his own deposition to explain away his intent, where he bears

17

the initial burden of production at summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 330-31 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-61 (1970)). Under Fed. R. Civ. P. 26(a), made applicable to this proceeding, Fed. R. Bankr. P. 7026, Jordan was not obligated to produce impeachment evidence relative to Debtor's intent during the discovery phase. Tasco v. IBEW, Local 98, 634 F. App'x 94, 96 (3d Cir. 2015).

Debtor cited for the Court the case of Knoll v. Uku (In re Uku), 658 B.R. 812 (Bankr. W.D. Pa. 2024), but upon a closer look the Court should observe that where issue preclusion does not reach the debtor's intent, then summary judgment is denied and a scheduling order is made for purposes of holding trial on the issue of intent. Id. at 820 "[T]his Court can have a trial on the specific issue of intent" for purposes of nondischargeability. Id.

Here, the Debtor cannot testify through his counsel in general, but doesn't even attempt to do so here as to what his intent was in misappropriating $15,496,492, of which half belonged to Jordan. Consequently, because of Debtor's wrongful conduct, the Court must proceed to trial and determine the Debtor's intent, if the Court will not award summary judgment to the Plaintiff. Summary judgment is not due for the Debtor.

## II.      Summary Judgment is Due for Jordan on Count II.

Count II of the Complaint reaches all consequential gain from the $8,105,197.20 in compensatory damages that Debtor misappropriated. [ECF No. 1 ¶¶ 10-12]. Debtor argues, "If summary judgment is granted as to Count I, Count II . . . is moot." [ECF No. 18, at 8]. The parties therefore agree that Count II is derivative of Count I.

Property interests are created and defined by State law in the absence of a Bankruptcy Code provision to the contrary. Butner v. United States, 440 U.S. 48, 55 (1979). "Consequential gains, as distinguished from proceeds, result from a profitable investment, use, or other disposition of the claimant's property, distinct from the transaction by which the defendant was originally enriched."

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 53, cmt. d. "Enrichment of this kind may be presumed in the case of a recipient who is enriched by misconduct (§ 51(1)) or who is otherwise responsible for the enrichment in question (§ 53). Id. § 53(1). Misconduct is "an actionable interference by the defendant with the claimant's legally protected interests for which the defendant is liable under §§ 13-15 or §§ 39-46 of this Restatement." Id. § 51(1). Section 43 is breach of fiduciary duty. Id. § 43.

Exceptions to discharge are applicable to "any debt" which satisfy any of the exceptions in Section 523(a). As further described in Part I.D, supra, the right to payment embraces all money "resulting from" or "traceable to" the same. Cohen v. De La Cruz, 523 U.S. 213, 218 (1998) (parenthetical note to Field v. Mans, 516 U.S. 59, 61 (1995)). The right to pay includes "treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor." Id. at 223. Consequential gain traceable to the underlying judgment, therefore, is other relief contemplated by Cohen as an "enforceable obligation," id., and included within non-dischargeability on the same grounds as Count I. The imposition of a constructive trust for consequential gain is a different means of enforcing the "right to payment," which includes "equitable" relief, 11 U.S.C. § 101(5)(A), and within the scope of the nondischargeable "debt." Id. §§ 101(12), 523(a).

In the alternative, the Court may find that consequential gain on the underlying judgment is not subject to discharge at all. Under the Code, the bankruptcy estate does not include property in which the Debtor holds "only legal title and not an equitable interest . . ." 11 U.S.C. § 541(d). The Debtor is liable under Section 541(d) by way of constructive trust to turnover such property, which includes $8,105,197.20 that he misappropriated and all consequential gain therefrom. Claybrook v. Consol. Foods, Inc. (*In re* Bake-Line Group, LLC), 359 B.R. 566, 571-72 (Bankr.

19

D. Del. 2007) ("The Third Circuit has held that this section serves to exclude from the debtor's bankruptcy estate any of the debtor's property held in constructive trust for another party at the time of a bankruptcy filing." (citing <u>Official Comm. of Unsecured Creditors of Columbia Gas Transmission Corp. v. Columbia Gas Sys. (<i>In re</i> Columbia Gas Sys., Inc.</u>), 997 F.2d 1039, 1059 (3d Cir. 1993)); RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 55 (remedy of constructive trust).

At this time, Jordan has <u>not</u> commenced a constructive trust adversary proceeding. Instead, Jordan here seeks a final ruling by this Court that all consequential gain from the judgment in the underlying action is either nondischargeable to the same extent as the underlying judgment or, alternatively, that all consequential gain is not subject to discharge under Section 523(a) at all. "Unlike debts, obligations to transfer property interests are not eligible for discharge and not governed by subsection 523(a)." <u>Hazelton v. Hazelton (<i>In re</i> Hazelton)</u>, 304 B.R. 145, 151 (M.D. Pa. 2003) (citing <u>Bennett v. Bennett (<i>In re</i> Bennett</u>), 175 B.R. 181, 184 (Bankr. E.D. Pa. 1994)). Therefore, the Court may award summary judgment in favor of Jordan that consequential gain traceable to the $8,105,197.20 that Debtor misappropriated is either not subject to discharge to begin with or nondischargeable to the same extent as the underlying judgment. Accordingly, summary judgment is due in favor of Jordan on Count II.

## III.   The Court Can Award Summary Judgment to the Nonmovant after Giving the Debtor Notice and a Reasonable Time to Respond.

The Court should readily observe that Defendant's brief is chock full of caselaw citations but little-to-no application of the law to the facts of the case. This is not accidental. Under the Federal Rules of Civil Procedure, made applicable to this proceeding, Fed. R. Bankr. P. 7056, "After giving notice and a reasonable time to respond, the court may: * * * grant summary judgment for a nonmovant." Fed. R. Civ. P. 56(f)(1).

20

The U.S. Supreme Court amended Civil Rule 56 in 2010 to add current Subsection (f), expressly allowing summary judgment to be granted to the nonmovant. It did not create a new rule but formalized an existing practice that may not have been uniform across federal courts and was probably not practiced in this District with any amount of frequency. The practice was encouraged by the well-respected scholars on civil procedure, Charles Alan Wright and Arthur Miller:

> When a plaintiff moves for summary judgment, a defendant does not serve and file a cross-motion for summary judgment, and the record developed on plaintiff's motion reveals that defendant is entitled to judgment, a court enjoys discretion to grant summary judgment to the nonmoving defendant. It is also well settled that this course may be followed only if great care is taken to assure that the moving party is afforded an adequate opportunity to show that there is a genuine issue as to one or more material facts necessary to the vindication of the legal theory relied upon by the nonmoving party.

Mason v. Melendez, 525 F. Supp. 270, 287 (W.D. Wis. 1981) (citing 10 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2720 (1973 & 1981 Supp.)). At summary judgment, "Filing a cross-motion is not a prerequisite to the entry of a judgment for the non-moving party." Keh Tong Chen v. U.S. Attorney Gen., 546 F. Supp. 1060, 1068 (D. D.C. 1982) (citing WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2719), followed by, District of Columbia v. Straus, 607 F. Supp. 2d 180, 185 (D. D.C. 2009). "We have sanctioned a sua sponte award by a court of summary judgment where it appears from the papers, affidavits and other proofs submitted by the parties that there were no material facts in issue and that judgment for the non-moving party would be appropriate as a matter of law." Lowenschuss v. Kane, 520 F.2d 255 (2d Cir. 1975); accord. Smith v. De Bartoli, 769 F.2d 451, 452 (7th Cir. 1985).

The U.S. Supreme Court encouraged this practice in 1986: "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) (citing 10A C. WRIGHT ET AL., FEDERAL PRACTICE &

PROCEDURE § 2720, at 28-29 (1983)). And now, by providing current Civil Rule 56(f), has formalized the same to make it available to all litigants.

Under Civil Rule 56(f)(1), the filing of a cross-motion is an unnecessary formality. Any party who moves for summary judgment opens the door for such entry against itself and "had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." Gibson v. Mayor & Council of Wilmington, 355 F.3d 215, 223-24 (3d Cir. 2004) (quoting Leyva v. On the Beach, Inc., 171 F.3d 717, 720 (1st Cir. 1999) (quotation omitted))); Welding Engineering, Ltd. v. NFM/Welding Engineering, Inc., 352 F. Supp. 3d 416, 428 (E.D. Pa. 2018) (applying Gibson to Fed. R. Civ. P. 56(f)(1)).

By filing a brief in opposition to summary judgment, the nonmovant can request the Court "issue an order to show cause why judgment should not be entered" for the nonmovant "under Fed. R. Civ. P. 56(f)(1)." Willis Re Inc. v. Hearn, 200 F. Supp. 540, 544 n.14 (E.D. Pa. 2016) (Kearney, *J.*). The same attains here.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Plaintiff requests that the Court deny the Defendant's Motion for Summary Judgment [ECF No. 18] and, after affording the Debtor notice and a reasonable time to respond, award summary judgment in favor of Plaintiff under Fed. R. Civ. P. 56(f)(1), incorporated by Fed. R. Bankr. P. 7056; and such other relief as the Court deems necessary, just, or appropriate.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: April 28, 2025          By:    /s/ Joel A. Ready
Joel A. Ready, Esquire
8500 Allentown Pike, Suite 3
Blandon, PA 19510

22

(610) 926-7875

23