United States Bankruptcy Court

Eastern District of Pennsylvania

Jordan,

    Plaintiff

Adv. Proc. No. 24-00145-pmm

Redmond,

    Defendant

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0313-4 | User: admin | Page 1 of 2 |
| Date Rcvd: Jul 31, 2025 | Form ID: pdf900 | Total Noticed: 7 |

The following symbols are used throughout this certificate:

**Symbol    Definition**

+    Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 02, 2025:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| dft | + | Alan Christopher Redmond, 2005 Regency Drive, Wyomissing, PA 19610-2712 |
| NONE | + | Ciardi Ciardi & Astin, 1905 Spruce Street, Phila, PA 19103-5732 |
| pla | + | Jason Scott Jordan, c/o Joel A. Ready, Esq., 8500 Allentown Pike, Suite 3, Blandon, PA 19510-9101 |

TOTAL: 3

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**

Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| smg | + | Email/Text: taxclaim@countyofberks.com | Aug 01 2025 00:13:00 | Tax Claim Bureau, 633 Court Street, Second Floor, Reading, PA 19601-4300 |
| smg | + | Email/Text: usapae.bankruptcynotices@usdoj.gov | Aug 01 2025 00:14:00 | U.S. Attorney Office, c/o Virginia Powel, Esq., Room 1250, 615 Chestnut Street, Philadelphia, PA 19106-4404 |
| ust | + | Email/Text: james.gannone@usdoj.gov | Aug 01 2025 00:13:06 | James Gannone, DOJ-Ust, Robert N.C. Nix Federal Courthouse, 900 Market Street, Suite 320, Philadelphia, PA 19107-4202 |
| ust | + | Email/Text: ustpregion03.ph.ecf@usdoj.gov | Aug 01 2025 00:14:00 | United States Trustee, Office of United States Trustee, Robert N.C. Nix Federal Building, 900 Market Street, Suite 320, Philadelphia, PA 19107-4202 |

TOTAL: 4

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 02, 2025                        Signature:        /s/Gustava Winters

District/off: 0313-4                          User: admin                                    Page 2 of 2
Date Rcvd: Jul 31, 2025                     Form ID: pdf900                          Total Noticed: 7

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on July 31, 2025 at the address(es) listed below:**

| Name | Email Address |
| --- | --- |
| Albert Anthony Ciardi, III | on behalf of Ciardi Ciardi & Astin aciardi@ciardilaw.com  sfrizlen@ciardilaw.com;dtorres@ciardilaw.com |
| JOEL A. READY | on behalf of Plaintiff Jason Scott Jordan joel@cornerstonelaw.us  valeria@cornerstonelaw.us |
| NICOLE MARIE NIGRELLI | on behalf of Defendant Alan Christopher Redmond nnigrelli@ciardilaw.com  sfrizlen@ciardilaw.com;dtorres@ciardilaw.com |

TOTAL: 3

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: Alan Christopher Redmond, | : | Chapter 11 |
| Debtor. | : | Bky.  No. 24-13093 (PMM) |
| | : | |
| Jason Scott Jordan, | : | |
| Plaintiff | : | |
| v. | : | |
| Alan Christopher Redmond, | : | |
| Defendant. | : | Adv.  No.  24-00145 (PMM) |

_____

# O P I N I O N

## I. INTRODUCTION

It is an old and oft-repeated tale, the non-dischargeability complaint predicated on a prepetition state court judgment.  That is, the distinction between proving liability and avoiding dischargeability is a "wellspring from which cases . . . flow."  Grogan v. Garner, 498 U.S. 279, 284 (1991).  It is not uncommon that a judgment creditor comes into bankruptcy court, state court opinion in hand, worn down after years of litigation.  This creditor then seeks a determination of non-dischargeability of the debt based solely on the state court findings, assuming such a determination to be purely perfunctory: it is anything but.  The source of law, standard of proof, and public policy underlying a finding of non-dischargeability are substantially different from a mere finding of liability.  Because the Plaintiff in this Adversary Proceeding, like so many other unsuspecting creditors, has provided little evidence beyond the

1

state court's findings of fact which are insufficient to support a determination of non-dischargeability, Alan Christopher Redmond's ("Redmond" or the "Defendant") Motion for Summary Judgment (the "Motion") will be granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Redmond incorporated National Brokers of America, Inc. ("NBOA") in 2013 as an insurance call center business. [1] Redmond hired Jason Scott Jordan ("Jordan" or the "Plaintiff") to set up and run a call center in Pennsylvania for NBOA in 2013. When Redmond was unable to fully pay Jordan for his services, Redmond agreed to transfer 50% ownership in NBOA to Jordan, and the two men operated as the only shareholders and directors of NBOA for nearly a year. However, in 2014, Redmond froze Jordan out of NBOA and took exclusive control of the operation, management, and finances of NBOA. See also In re Nat'l Brokers of Am., Inc., 663 B.R. 661, 665-68 (Bankr. E.D. Pa. 2024).

Redmond and Jordan were locked in state court litigation for seven (7) years. Jordan finally secured a verdict for $13,105,197.20; roughly $8 million stemming from the funds Redmond misappropriated from NBOA after the freeze out and $5 million in punitive damages. Berks County Court of Common Pleas Judge Rowley adopted *nearly all* of Jordan's proposed findings of fact, describing at length Redmond's actions by which he violated numerous bylaws of NBOA, misappropriated millions of dollars from NBOA, ran extravagant personal purchases through NBOA's financial accounts, and made false statements to his accountant and on NBOA's

---

[1]     Many facts predating Redmond's present chapter 11 case are taken from a "Decision and Verdict" (the "Decision") authored by Judge Rowley in the Berks County Court of Common Pleas. See doc. # 1, Ex. A. Redmond answered the Complaint and admitted that Exhibit A was a true and correct copy of the state court Decision. See doc. # 5, ¶ 5. Redmond's Motion for Summary Judgment does not appear to dispute the factual findings within the Decision or that Jordan can rely on those facts as conclusively determined for purposes of this proceeding. See Motion at 5.

tax documents.  Redmond also caused serial bankruptcy filings to prolong the litigation and "hold Jordan at arm's length while he drained NBOA's coffers" and transferred its assets to a different entity.

On September 03, 2024, Jordan and two (2) additional petitioning creditors filed an involuntary chapter 11 petition against Redmond.  After hearing, an order for relief was entered October 02, 2024.  Two (2) months later, Jordan filed both a proof of claim (later amended) for $13,105,197.20 and the present action alleging the non-dischargeability of the debt.  See "Complaint," doc. # 1.[2]  Thereafter, Redmond answered.

The Court issued a pre-trial scheduling order, requiring:

- a Fed. R. Civ. P. 26(f) report, if needed, be filed by February 05, 2025,

- discovery to be completed on or before March 11, 2025,

- disclosures pursuant to Fed. R. Civ. P. 26(a)(3) made before March 17, 2025, and

- motions for summary judgment be filed by March 28, 2025.  See doc. #'s 6, 8.

Both parties timely filed Rule 26(f) reports.  However, while the Defendant summarily agreed to the Court's proposed scheduling order, the Plaintiff opted to submit a five (5) page brief arguing that discovery was unnecessary.[3]  On March 17, 2025, the Defendant timely filed his Rule 26(a)(3) pretrial disclosures.  Doc. # 13.  One week later, the Plaintiff filed his untimely Rule

---

[2]  Included in Jordan's Complaint is "Count 2" which requests a determination that Jordan is also owed "consequential gain [] traceable to the" claimed amount, and that those additional sums are similarly nondischargeable.  See Complaint, ¶¶ 10-12.  The parties do not appear to have argued, briefed, or sought discovery on this matter.  Because the Defendant will be granted summary judgment on the issue of dischargeability, Count 2 is moot.  To the extent that Jordan wishes to amend his proof of claim, he may attempt to do so; to the extent that Redmond finds issue with an amended proof of claim, the claims objection process will resolve that disagreement.

[3]  Jordan argues that the dischargeability issue may be resolved on the briefs with "an evidentiary hearing on the Defendant's intent."  See doc. # 12 at 5.  Jordan requested the Court hold a discovery conference, seemingly asking for an advance determination of whether he would need more evidence or not to carry his burden.  See id. at 4-5.  The Court, finding this request inappropriate, declined to schedule a hearing.

26(a)(3) disclosures.  Doc. # 15.  Additionally, the Plaintiff wrote to the Court, renewing his request for a discovery conference, again arguing that the state court Decision was alone sufficient to prove his case, and that the Defendant should not be permitted to take discovery "aimed at re-litigating the merits of the underlying case."  Doc. # 16.  The Defendant responded to the untimely disclosure, indicating that Plaintiff "failed to serve any discovery on Defendant," produced only one (1) document in response to Defendant's discovery request, and that "Jordan identified one document and no witnesses."  Doc. # 17, ¶¶ 5, 7, and 15.  The Defendant also reiterated his position that he "denied the intent required under Section 523 and proof of intent lies solely with the Plaintiff."  Id. ¶ 12.

On March 28, 2025—the deadline for the submission of summary judgment motions— the Defendant filed the pending Motion for Summary Judgment.  On April 28, 2025, the Plaintiff filed an Opposition Brief.[4]  "Opposition," doc. # 24.  The Defendant replied.[5]

The matter is now ripe for adjudication.

### III. THE PARTIES' ARGUMENTS

Only the Defendant moved for summary judgment; he seeks judgment as a matter of law on all claims.

---

[4]    In this Brief, Jordan opposes summary judgment but also argues that the Court can and should consider granting summary judgment for Jordan as a nonmovant.  See Opposition at 18-22.  The Court's amended pre-trial scheduling order is clear: "All motions to amend the pleadings, or for summary judgment, shall be filed **on or before March 28, 2025.**"  Doc. # 8, ¶ 6 (emphasis in original).  Additionally, the footnote in the order instructs that "[a] motion for summary judgment shall include a separate statement of those material facts that the movant contends are not in dispute with supporting citations to the record.  Failure to comply with this requirement shall be grounds for summary denial of the motion."  Id.  The Court finds no reason not to adhere to its instructions and therefore will not consider Jordan's untimely request for summary judgment.

[5]    Jordan requested, and the Court denied, permission to file a further sur-reply.  See doc. #'s 32, 36.

Jordan's Complaint alleges that 11 U.S.C. §§523(a)(2)(A), (a)(4), and (a)(6) prevent discharge of the debt stemming from the state court Decision.[6] Jordan consistently argues that the factual findings contained within the Decision are preclusive and alone compel a finding of non-dischargeability.

The Defendant, since filing his Answer, has consistently taken the position that the Decision alone does not support a finding of non-dischargeability. In parsing the state court findings of fact, he argues that those facts alone are insufficient to prove the elements required for a non-dischargeability finding under any prong of §523. Specifically, the Defendant argues that Jordan cannot prove a fiduciary relationship, as required by the first half of §523(a)(4). Further, absent a fiduciary relationship, each of the remaining causes of action include an element of intent or wrongful state of mind, which Jordan likewise cannot prove based solely on the Decision. Additionally, the Defendant argues that because Jordan has repeatedly expressed his intent to rely exclusively on the Decision and opted not to take any discovery in this matter, Jordan's evidence is necessarily limited to those facts in the Decision.

Jordan maintains in his Opposition that the Defendant needed to take his own deposition to "explain away his intent" to succeed, here, at summary judgment. Opposition at 17-18. Jordan also repeatedly mentions his ability to introduce impeachment evidence at trial without prior disclosure during discovery. See id.; doc. # 18 at 3-4.

### IV. LEGAL STANDARD

The standard regarding summary judgment is well known and will be summarized briefly. Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if

---

[6]    Unless otherwise noted, all statutory references hereinafter are to Title 11, the Bankruptcy Code.

5

"the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Genuine issues of material fact refer to "any reasonable disagreement over an outcome-determinative fact." In re Energy Future Holdings Corp., 990 F.3d 728, 737 (3d Cir. 2021) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The purpose of a motion for summary judgment is not to weigh the evidence presented, but rather to determine if the evidence warrants adjudication by trial. Anderson, 477 U.S. at 249–52. In reviewing the evidence presented, the court must draw all reasonable inferences in the light most favorable to the nonmoving party. Halsey v. Pfeiffer, 750 F.3d 273, 287 (3rd Cir. 2014).

To successfully oppose entry of summary judgment, the nonmoving party may not simply rest on its pleadings, but must demonstrate, through the submission of admissible evidence, that a factual dispute remains for trial. In re Bentivegna, 597 B.R. 261, 263–64 (Bankr. E.D. Pa. 2019) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

### V. DISCUSSION

There are two (2) distinct questions that this Court must answer. First, it is necessary to determine the extent of the evidentiary record available to Jordan. Second, after answering this antecedent question, the Court must determine whether based on the admissible evidence, a material factual dispute remains for trial regarding Jordan's ability to prove non-dischargeability of the debt.

**A.  Jordan's evidence in his case-in-chief is limited to the state court Decision**

Jordan has proceeded in cavalier fashion throughout the course of this litigation.  While a party is free to make strategic calls about how much time and effort to devote to the litigation process, the Plaintiff has confidently rested on his laurels since day one, assuming the Decision was sufficient to maintain his case-in-chief.  However, the Defendant's Answer, filed January 6, 2025, indicated the inadequacies of that document standing alone.  See doc. # 5, ¶¶ 7-8.  The Defendant early on denied the allegation that the facts in the Decision supported a finding of non-dischargeability, pointing out that "nowhere in the Decision does it say there is a finding of fraud against the Defendant.  Moreover, the Decision is equally silent on the issues of whether Defendant obtained services from the Plaintiff by false pretenses or false representations. Finally, fraud was not plead by the Plaintiff in the underlying state court matter." Id.  Jordan knew from the time discovery began that the Defendant would press his argument that the Decision alone was insufficient.

Rather than take discovery to bolster his case, Jordan defaulted on multiple deadlines and failed to respond to the Defendant's requests.  In response to the Defendant's request for identification of persons with discoverable information, Jordan summarily referenced the Decision and state court docket. See doc. # 18, Ex. G at 4.  Jordan's answers to the interrogatories were generally of the same dismissive nature; interrogatories concerning exhibits or documents to be produced at trial, communications and documents Jordan intended to use to prove fraudulent intent, and facts related to contentions of non-dischargeability were all met with the same response: "Read the [Decision]." See id. at 5-8.

When the parties filed their Rule 26(f) reports, Jordan submitted what appeared to be a legal brief arguing for issue preclusion. See generally doc. # 12.  Ironically, in this pleading,

7

Jordan mentions that if "issue preclusion does not apply [] discovery may be necessary." Id. at 4. The Court declined to schedule a discovery conference or issue what would have been an advance ruling on a substantive legal issue couched in Jordan's 26(f) report.

Jordan allowed discovery to close (on March 11, 2025) without meaningful participation. See Opposition at 5. Jordan filed his Rule 26(a)(3) disclosures one week late along with an ad hoc correspondence on the docket again requesting a discovery conference. See doc. # 17. The Defendant promptly objected to the untimely disclosure and timely moved for summary judgment. As indicated above, Jordan attempted to smuggle an untimely request for summary judgment into his response filed long after that deadline. See Opposition at 18-22; supra note 4.

Due to Jordan's apathy throughout discovery and repeated failure to comply with deadlines, his evidence in his case-in-chief is limited to the Decision. In fairness, Jordan has repeatedly expressed his belief that the Decision is all that is needed for him to succeed on a finding of non-dischargeability. Confusingly, Jordan failed to move for judgment on the pleadings or for summary judgment in advance of the close of discovery. See Fed. R. Bankr. P. 7012, 7056. The Plaintiff squandered the opportunity to seek judgment through the prescribed procedural channels. Jordan himself acknowledged early on that if the Court ruled against him on issue preclusion, discovery would be necessary. Discovery has closed and it would be prejudicial to the Defendant to now allow Jordan to rely on anything other than the Decision and the facts contained within that document when evaluating this request for summary judgment.[7]

---

[7]     The Plaintiff argues that he will still have access to evidence and documents at trial for impeachment purposes. See Opposition at 6. While true, that conclusion presupposes that Jordan has put on a case-in-chief that can survive judgment on partial findings and that Redmond is forced to testify as to his intent. See Fed. R. Bankr. P. 7052. After failing to engage in the discovery process, Jordan cannot evade summary judgment by simply suggesting that more evidence will be submitted later for impeachment purposes; now is the time to demonstrate that a trial is, in fact, necessary.

**B. Summary judgment for the Defendant is appropriate on all theories of non-dischargeability**

Section 523(a) contains a list of debts exempt from discharge based on the characteristics of that debt or the manner in which it was incurred.  When a creditor seeks a determination under §523(a), that creditor bears the burden of demonstrating non-dischargeability by a preponderance of the evidence.  See Grogan, 498 U.S. at 291.  While the validity and extent of liability of a creditor's claim is determined by state law, the issue of non-dischargeability is governed by federal law and the Bankruptcy Code.  Id. at 284.  A creditor might seek to reduce litigation by invoking issue preclusion in a dischargeability action based on the findings of the state court.  Id.

Under Pennsylvania Law, issue preclusion applies when:

(1) an issue is identical to one that was presented in a prior case;

(2) there has been a final judgment on the merits of the issue in the prior case;

(3) the party against whom the doctrine is asserted was a party in, or in privity with a party in, the prior action;

(4) the party against whom the doctrine is asserted, or one in privity with the party, had a full and fair opportunity to litigate the issue in the prior proceeding; and

(5) the determination in the prior proceeding was essential to the judgment.

In re Jacobs, 381 B.R. 128, 142 (Bankr. E.D. Pa. 2008) (citing Cohen v. Workers' Comp. Appeal Bd. (City of Philadelphia), 909 A.2d 1261, 1264 (Pa. 2006)) (additional citations omitted).

While the Court is bound to accept the factual findings in the Decision, and the Defendant is not contesting the validity of those findings, there is disagreement about the identity of issue presented.  For issue preclusion to apply, those factual findings must establish all the necessary elements of §523(a)(2)(A), (a)(4), or (a)(6).  See In re Uku, 658 B.R. 812, 816-20 (Bankr. W.D. Pa. 2024); In re Vepuri, 2009 WL 2921305, at *6 (Bankr. E.D. Pa. Mar. 25, 2009), aff'd, 2010 WL 1303456 (E.D. Pa. Mar. 31, 2010).

For purposes of this analysis, there are three (3) logical subsets of Jordan's non-dischargeability claims. First, there are the claims that require a finding of a fiduciary relationship under §523(a)(4). 11 U.S.C. §523(a)(4) ("for fraud or defalcation while acting in a fiduciary capacity.") Second, §523(a)(2)(A) and the remaining claims under §523(a)(4) requiring "embezzlement" or "larceny", all of which require a form of fraudulent intent by the Defendant. Third, §523(a)(6), which alone requires "willful and malicious" conduct.

      *i.*     *Fiduciary Capacity*

The facts in the Decision cannot support a finding by a preponderance of the evidence that Redmond was acting in a fiduciary capacity when the debts were incurred. Section 523(a)(4) exempts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity." Some courts have held that the concept of a fiduciary in the §523(a)(4) dischargeability context is narrower than the general definition of a fiduciary. See Goldberg v. New Jersey Lawyers' Fund for Client Protec., 932 F.2d 273, 278 (3d Cir. 1991).[8] Generally, the concept of a fiduciary, for §523(a)(4) purposes, requires the existence of an express or technical trust. See In re Ishmael, 2008 WL 80040, at *4 (Bankr. E.D. Pa. Jan. 7, 2008); In re Laddeck, 2001 WL 423026, at *3 (Bankr. E.D. Pa. Apr. 11, 2001). That is, a bankruptcy court will not assume a fiduciary relationship exists unless such a relationship is clearly and expressly created by applicable nonbankruptcy law. See 4 Collier on Bankruptcy ¶ 523.10(1)(d) (16th 2025).

---

[8] The Third Circuit has acknowledged the difference of opinion but has never weighed in on the issue directly. See In re Hawranko, 627 B.R. 305, 313 (Bankr. W.D. Pa. 2021) (recognizing that the Third Circuit has never returned to the issue after noting it in Goldberg); In re Ishmael, 2008 WL 80040, at *4 (Bankr. E.D. Pa. Jan. 7, 2008).

10

Here, the Decision includes neither the term "fiduciary" nor "trust," and Judge Rowley did not find that Redmond was acting in a fiduciary capacity. See generally doc. # 2. Despite this, Jordan argues that because Redmond was a director and corporate officer of NBOA, Redmond was necessarily a fiduciary of NBOA when the debt was incurred. Opposition at 3. Jordan then goes on to cite his own briefing to the state court in which he argued that Redmond had breached his fiduciary duty. Id. The Defendant points out that the state court explicitly found there was no fiduciary duty owed by Redmond to Jordan by virtue of his being a 50% shareholder in NBOA. See doc. # 18 at 2 n.2. Jordan complains that this is an overreading of the state court ruling. See Opposition at 3.

Given the narrower understanding of the term "fiduciary" in §523(a)(4), even an explicit finding of a fiduciary relationship by the state court, without more, is insufficient for issue preclusion to apply. Here, the state court made no such finding and did not mention the concept of a fiduciary or trust. Additionally, the state court went so far as to note that it was accepting "nearly all of [Jordan's] Proposed Findings of Fact" but it did not adopt the copious references to fiduciary duties that Jordan included in his proposed conclusions of law in the same document. Compare Opposition, Ex. 1 at 14-18 with doc. # 2. Given that the Decision is silent as to a finding of a fiduciary relationship, Jordan cannot rely on issue preclusion to satisfy this element of §523(a)(4).

Alternatively, Jordan's argument that the state court findings can be cobbled together to prove the existence of a fiduciary capacity under Pennsylvania law is unavailing. Jordan cites much law but few facts. See Opposition at 12 (conclusory assertion that the "findings by Judge Rowley satisfy" the legal standard for defalcation by a fiduciary). While Redmond was certainly a fiduciary of NBOA as its corporate officer, the facts in the Decision do not suggest that

11

Redmond breached that duty or that the subject debt here was incurred as a result of any such breach. Rather, such a finding is belied by the fact that the state court, by order, held that there was no fiduciary duty by a 50% shareholder to another 50% shareholder. See doc. # 18, Ex. D at 22. While Jordan may be correct that this order by Judge Rowley did not preclude a finding of fiduciary capacity on other theories, it certainly cuts against the argument that the Decision tacitly found the existence and breach of an unmentioned fiduciary duty. This conclusion is further supported by Judge Rowley's decision to forego any of Jordan's proffered language regarding "fiduciary" law.

The facts contained in the Decision are insufficient to prove that the judgment resulted from fraud or defalcation by Redmond acting as a fiduciary. Because Jordan offers no other evidence, the Court can conclude that there no material facts in dispute that preclude summary judgment for the Defendant on the issue of fiduciary capacity.

ii.    *Fraudulent Intent*

Next, the facts in the Decision do not support a finding that Redmond had the necessary intent under §§523(a)(2)(A) and (a)(4). Section 523(a)(2)(A) requires the creditor to show that "(1) the debtor made the representations knowing they were false; (2) the debtor made the representations with the **intent and purpose of deceiving the plaintiff**; (3) the creditor justifiably relied on the debtor's false representations; and (4) the creditor suffered a loss or damage as a proximate consequence of the representation having been made." Vepuri, 2009 WL 2921305, at *10 (citing Field v. Mans, 516 U.S. 59, 61 (1995)) (emphasis added). Embezzlement, for purposes of §523(a)(4), requires the creditor to show that "(1) the debtor was entrusted; (2) with property; (3) of another; (4) which the debtor appropriated for his own use; and (5) with **fraudulent intent**." Uku, 658 B.R. at 818 (emphasis added); see also In re Kaplan,

12

608 B.R. 443, 457 (Bankr. E.D. Pa. 2019) ("Embezzlement requires a showing of fraudulent intent."). Larceny is the "felonious taking of another's personal property with intent to convert it or deprive the owner of same and requires a showing of **felonious intent**. Uku, 658 B.R. at 818 (emphasis added); see also In re Olson, 2024 WL 2124911, at *7 (Bankr. E.D. Pa. May 10, 2024), aff'd sub nom. Wiley v. Olson, 2025 WL 950388 (E.D. Pa. Mar. 28, 2025) (recognizing that larceny requires an intent to convert property that was wrongful at the initial appropriation of the property). Thus, both prongs of §523(a)(4) require a similar showing of fraudulent intent. See In re Clayton, 198 B.R. 878, 885 (Bankr. E.D. Pa. 1996) ("Essential to both larceny and embezzlement is the element of **fraudulent intent**.") (emphasis added).

The state court Decision includes no findings of fraudulent intent or facts that would support such a finding. While the Court will not go line by line through the Decision, this opinion will address those sections Jordan cites as the strongest for his position.

First, the Decision repeatedly uses the term "misappropriation" when describing Redmond's actions. See doc. # 2 at 9-13 (using some derivation of "misappropriate" seventeen (17) times). Jordan argues that misappropriation is essentially synonymous with embezzlement and therefore sufficient for issue preclusion as to §523(a)(4). See Opposition at 9. Jordan cites Black's Law Dictionary, which defines "misappropriation" as "[t]he application of another's property or money dishonestly to one's own use." See Misappropriation, Black's Law Dictionary (12th ed. 2024). Jordan also relies heavily on In re Feng Li, an unreported Third Circuit opinion. 610 F. App'x 126, 128 (3d Cir. 2015).

"Misappropriation" cannot bear the weight Jordan attempts to place on it. In the Court's review of Pennsylvania case law, misappropriation is used almost exclusively in the context of intellectual property and trade secrets, irrelevant to present purposes. E.g., Sorbee Int'l Ltd. v.

Chubb Custom Ins. Co., 735 A.2d 712, 716 (Pa. Super. 1999) (discussing the common law tort of

"misappropriation" as applied to trademark infringement and advertising ideas).[9] When the term

is used outside that context, the word does not carry any clear substantive legal meaning. Jordan

points to Commonwealth v. Coward, where the Superior Court mentions in passing that "a

person can be convicted of an embezzlement-type offense if he or she misappropriates funds for

a use inconsistent with the purpose for which the funds are held." 478 A.2d 1384, 1387 (Pa.

Super. 1984). This quotation can hardly support the argument that embezzlement is equivalent to

misappropriation. Rather, various dictionary definitions and colloquial usages of the word

"misappropriate" point up the ambiguity inherent in its usage in Judge Rowley's opinion.[10]

Additionally, the Feng Li opinion does little to support Jordan's position. In Feng Li, the

Third Circuit considered a New Jersey Supreme Court opinion disbarring an attorney for

"knowing misappropriation of client funds without a good faith belief that he was entitled to

those funds." 610 F. App'x at 128. The Bankruptcy Court found collateral estoppel applicable

and held the debt was ineligible for discharge pursuant to §523(a)(4). Id. However, on appeal,

the debtor was not objecting to the substantive determination under the standard of §523(a)(4);

rather, the debtor's argument before the Third Circuit was that collateral estoppel could not apply

---

[9]    Even in the realm of intellectual property, it appears that "misappropriation" carries with it the ambiguity of
common parlance and is subject to dictionary definitions and multiple readings that include simple "incorrect" usage
or usage without proper permission. See Sorbee, 735 A.2d at 717.

[10]    Misappropriation is often used by courts to describe an action not inclusive of fraudulent or otherwise
illegal or wrongful intent. See e.g., In re Cockey, 622 B.R. 178, 189 (Bankr. D. Md. 2020) ("The Plaintiffs must
show that the Debtor had a fraudulent or unlawful intent, directed at the Plaintiffs, at the time of the claimed
misappropriation."); In re Anderson, 2018 WL 1475981, at *18 (Bankr. D. Md. Mar. 23, 2018), aff'd, 599 B.R. 504
(D. Md. 2019), aff'd sub nom. Anderson v. Harbor Bank of Maryland, 818 F. App'x 259 (4th Cir. 2020) ("[T]he
plaintiff must show that the defendant unlawfully misappropriated funds for his or her own benefit and that he did so
with fraudulent intent that was malicious or wrongful.").

because the New Jersey Supreme Court lacked jurisdiction to enter the disbarment. Id. at 129. The issue of whether use of the word "misappropriation" alone falls within the ambit of §523(a)(4) was neither raised nor resolved.

Second, Jordan points to certain findings which he claims lead to an inference of fraudulent intent. "Redmond froze Jordan out of NBOA." Doc. # 2, ¶ 29. "Redmond acted *ultra vires* to freeze Jordan out of NBOA and keep all benefits of NBOA for himself." Id. ¶ 48. "Redmond knowingly and intentionally lied to C. Malcolm Smith to induce the materially false statement on the 2014-2017 NBOA returns. . ." Id. ¶ 50. "Thus, the sum of money that Redmond misappropriated from NBOA and Bene Market, LLC, and did not share with Jordan, equals $15,496,492." Id. ¶ 78. "Redmond relied on his unproven pleadings and by serially filing bankruptcy on the eve of trial to create the seven year pendency of this litigation so that he could hold Jordan at arm's length while he drained NBOA's coffers and then moved all assets over to Bene, Market, LLC." Id. ¶ 80.

While these findings in the Decision are certainly helpful in understanding why Redmond was found liable for such a large sum, they do not prove fraudulent intent regarding the debt incurred to Jordan. Again, problematically for Jordan, Judge Rowley did not include any of Jordan's proposed conclusion of law. In addition to breach of fiduciary duty, Jordan briefed numerous legal standards including conversion, unjust enrichment, breach of contract, usurpation of corporate opportunities, and punitive damages. Opposition, Ex. A. The parties disagree about which theories of liability were actually before the state court when the Decision was rendered. See Motion at 9 ("the only thing the Plaintiff has is the State Court Judgment based upon civil conversion liability"); Opposition at 3 ("the pleadings were there [*sic*] amended to conform to the evidence"). However, knowing that Jordan is limited to the findings in the Decision, it

becomes immaterial that the parties do not agree on this factual point. If the Decision is ambiguous on its face and Jordan has no other evidence to present, and recognizing that exceptions to discharge are strictly construed against the creditor, see In re Pazdzierz, 718 F.3d 582, 586 (6th Cir. 2013), the issue is necessarily resolved against Jordan who must carry the evidentiary burden.

While the Decision is facially ambiguous as to the theory of liability, the Defendant points out contextual evidence that suggests that the opinion was likely a finding of conversion or breach of contract, not a finding of fraud. The Decision goes out of its way to indicate that it is adopting nearly all of Jordan's proposed facts. Therefore, the few alterations made by the state court carry significance. Three (3) indicia suggest Judge Rowley limited the Decision to something less than fraud. First, as mentioned above, the Decision includes none of the conclusions of law which would explicitly inform the reader what cause of action liability was predicated on. Second, the Decision adds emphasis to paragraphs 42 through 44. See doc. # 2, ¶¶ 42-44. These paragraphs detail all the ways in which Redmond violated the shareholder agreement to which he was a party to with Jordan; none of these facts suggest fraud but are all centered on ways in which Redmond's actions breached the agreement and led to Redmond taking possession of funds improperly. Third, and most remarkable, Judge Rowley never used the word "fraudulently" despite Jordan including this word *seventeen times* in his proposed findings. See Opposition, Ex. A at 9-13. In many instances, the Decision adopts Jordan's proposed language verbatim, save for the removal of the word "fraudulently." These choices clearly indicate that whatever the source of liability was, it was not premised on a finding of fraud or fraudulent intent.

16

In sum, based on its structure and language choice, the Decision standing alone does not show, by a preponderance of the evidence, that Redmond possessed the necessary fraudulent intent required under §§523(a)(2) and (a)(4). Because Jordan offers no additional evidence, the Court can conclude there are no material facts in dispute that preclude summary judgment for the Defendant on the issue of fraudulent intent.

iii.     *Willful and Malicious Injury*

Willful and malicious injury, for purposes of §523(a)(6), requires a creditor to show that the debt arises from "'**deliberate' or 'intentional' conduct**" that is 'wrongful and without just cause or excuse.'" Jacobs, 381 B.R. at 136 (emphasis added). That is, the harm must be intentionally or purposefully inflicted; recklessly or negligently inflicted harms are not included. See Kawaauhau v. Geiger, 523 U.S. 57, 64 (1998). Even within intentional acts, certain intentional torts, without more, will not satisfy the willful and malicious standard of §523(a)(6). See In re Coley, 433 B.R. 476, 499 (Bankr. E.D. Pa. 2010) (noting that courts have required accompanying "malicious and willful tortious conduct" to an intentional breach of contract to bring it within the ambit of §523(a)(6)). While the standard can be amorphous, any test applied by courts for what constitutes "'malice' requires some proof regarding the debtor's **state of mind**." Id. at 501 (emphasis added). Notably, conversion alone is not dispositive of the proper intent under §523(a)(6). Congress expressly adopted the "willful and malicious" standard to overrule caselaw where courts had found conversion, conducted innocently or recklessly, resulted in non-dischargeable debts. See In re Held, 734 F.2d 628, 629 (11th Cir. 1984). Even an underlying award of punitive damages is not dispositive of the issue of willful and malicious injury. See id. at 630.

17

The above discussion regarding fraudulent intent applies with equal force here. Nowhere in the Decision is there a finding that Jordan's actions were willful and malicious. Rather, we are again left with an ambiguous state court opinion that is best read as a finding of conversion and/or breach of contract. Even the finding of punitive damages does little to help the Plaintiff. To succeed, Jordan must prove that Redmond acted "deliberately" or "intentionally" and must introduce evidence to prove the particular "state of mind" required under the statute. The Decision does none of these things.

Therefore, because the Decision is devoid of evidence to show the state of mind required for a finding of non-dischargeability under §523(a)(6), Jordan cannot rely on the Decision to meet his evidentiary burden. Because Jordan has no other evidence, there are no material facts in dispute that preclude summary judgment for the Defendant on the issue of whether the debt resulted from willful and malicious injury.

## VI. CONCLUSION

Many creditors have sought non-dischargeability of a debt based solely on a prior judgment; many creditors have been denied that relief on stronger evidence than what Jordan has presented here.[11] Frustrating as it may be for creditors, succeeding on a determination of non-

---

[11] See In re Held, 734 F.2d 628, 629 (11th Cir. 1984) (state court jury finding of conversion with punitive damages was not preclusive of the issue of willful and malicious injury); In re Uku, 658 B.R. 812, 816-18 (Bankr. W.D. Pa. 2024) (holding that despite explicit success on a "breach of fiduciary duty" claim in state court, the §523(a)(4) burden of establishing fiduciary capacity was not met); In re Kaplan, 608 B.R. 443, 449 (Bankr. E.D. Pa. 2019) (finding that a prior jury verdict for "RICO, conversion, breach of fiduciary duty, tortious interference with contract" was not fully preclusive on the issue of fraud and not entitled to any preclusive effect on issues of fiduciary capacity, embezzlement, or willful and malicious injury); In re Vepuri, No. ADV 08-0156, 2009 WL 2921305, at *11 (Bankr. E.D. Pa. Mar. 25, 2009), aff'd, No. 09-CV-1901, 2010 WL 1303456 (E.D. Pa. Mar. 31, 2010) (finding that a jury verdict for conversion and unjust enrichment, which included findings of fraud and civil conspiracy, but lacked finding that the debtors were a part of the conspiracy, was not preclusive of the issues of fraud or willful and malicious injury).

18

dischargeability is a burden independent from establishing liability.  The bankruptcy process is intended to allow debtors relief from many legitimate debts and the burden rests on the creditor to prove that the debt they hold is unlike those other debts and should follow the debtor after discharge.

Jordan, through his own words, inactions, and procedural defaults, limits the evidence presented to the state court Decision.  Because that Decision contains findings inadequate to support a finding here of fiduciary capacity, fraudulent intent, or the state of mind required for willful and malicious injury, there is no material fact in dispute necessitating trial.  Therefore, summary judgment will be entered for the Defendant on all counts.

**Date: July 31, 2025**

_____
**PATRICIA M. MAYER
U.S. BANKRUPTCY JUDGE**

19