UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON SCOTT JORDAN,<br>Appellant, | : | |
| | : | |
| v. | : | Civil Action No. 5:25-cv-4712<br>Bankruptcy No. 24-13093<br>Adversary No. 24-00145 |
| | : | |
| ALAN CHRISTOPHER REDMOND,<br>Appellee. | : | |

MAY 14 2026

## O R D E R

**AND NOW**, this 5th day of May, 2026, for the reasons set forth in the Opinion issued this date, **IT IS HEREBY ORDERED THAT**:

1.    The appeal is **GRANTED in part** and **DENIED in part**.

2.    The Bankruptcy Court's Order dated June 11, 2025, denying Jordan's Motion for Leave to File Sur-Reply is **ADOPTED** and **AFFIRMED**.

3.    The Bankruptcy Court's decision dated July 31, 2025, granting summary judgment in favor of Redmond is **ADOPTED in part**, **AFFIRMED in part**, and **REVERSED in part**.

4.    Jordan's claim that the debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(6) is **REMANDED** to the Bankruptcy Court for trial.

5.    The above-caption case (Civil Action No. 5:25-cv-4712) is **CLOSED**.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

JASON SCOTT JORDAN,           :
      Appellant,           :
                            :     Civil Action No. 5:25-cv-4712
      v.           :     Bankruptcy No. 24-13093
                            :     Adversary No. 24-00145
ALAN CHRISTOPHER REDMOND,     :
      Appellee.           :

**O P I N I O N**
**Appeal of Bankruptcy Court's Order dated July 31, 2025 –**
**Adopted in part, Affirmed in part, Reversed in part, Remanded**

**Joseph F. Leeson, Jr.**                                 **May 5, 2026**
**United States District Judge**

## I.    INTRODUCTION

This case presents an appeal from the decision of the Bankruptcy Court determining that

the debt owed because of a large state court verdict is dischargeable in bankruptcy. The state

court verdict-winner, Jason Scott Jordan, is the Appellant here and challenges the Bankruptcy

Court's decision granting summary judgment in favor of the debtor Alan Christopher Redmond.

For the reasons set forth below, the Bankruptcy Court's opinion is adopted in part, affirmed in

part, reversed in part, and remanded for trial.

## II.    BACKGROUND

### A.    Factual Background[1]

In 2013, Redmond incorporated National Brokers of America, Inc. ("NBOA"), an

insurance call center business. Redmond hired Jordan to set up and run a call center in

---

[1]    The facts described in this subsection are not in dispute. They are taken from the
Bankruptcy Court Opinion at 1, *see* ECF No. 6-2, the State Court Opinion at ¶¶ 4-40, *see* ECF
No. 6-2, and Jordan's appellate brief at 4-8, *see* ECF No. 6.

1

Pennsylvania for NBOA, but when Redmond was unable to fully pay Jordan for his services,

Redmond agreed to transfer 50% ownership in NBOA to Jordan. Jordan and Redmond were the

only shareholders and directors of NBOA. Jordan and Redmond took equal dividends from

NBOA.

In August 2014, once NBOA was finally making money, Redmond changed the locks on

the NBOA place of business without giving Jordan a key and placed an armed guard there so that

Jordan could not enter the business. Redmond froze Jordan out of NBOA and took exclusive

control of the operation, management, and finances of NBOA. Thereafter, Redmond, in

violation of NBOA Bylaws, refused to furnish annual financial statements of NBOA to Jordan or

to pay NBOA dividends to Jordan, instead paying only himself.

### B.    State Court Action

In the fall of 2014, NBOA and Redmond initiated an action against Jordan in the Berks

County Court of Common Pleas. *See* State Docket Sheet, AO249.[2] On December 11, 2014,

Jordan filed a Counterclaim against Redmond for: (1) Breach of Contract/Wage Payment and

Collection Law, (2) Breach of Contract/Violation of Shareholder's Agreement, (3) Breach of

Contract/Violation of Amended Bylaws, (4) Breach of Fiduciary Duty to Shareholder, (5)

Appointment of Appraiser to Determine Fair Value of Corporate Stock, and (6) Conversion. *See*

Counterclaim ¶¶ 74-115.[3] While the case was pending, Redmond "serially fil[ed] bankruptcy on

the eve of trial to create the seven year pendency of [the] litigation so that he could hold Jordan

at arm's length while he drained NBOA's coffers and then moved all assets over to Bene,

---

[2]    The state court docket sheet in *National Brokers of America, Inc. v. Jordan*, No. 14-17117 (Berks Cty Ct. Com. Pleas), is in Volume II of the Appendix at A249-A265, ECF No. 7.
[3]    Jordan's Answer with Counterclaim filed in the state court action is in Volume II of the Appendix at A150-A168, ECF No. 7.

050426

Market, LLC." *See* Decision ¶ 80.[4] Eventually, on September 20-21, 2021, the parties

proceeded with a bench trial.[5] *See* State Docket Sheet, A260. On December 20, 2021, the state

court judge, issued a written verdict (the "Decision") in favor of Jordan and against Redmond in

the total amount of $13,105,197.20, which consisted of compensatory damages including pre-

judgment interest in the amount of $8,105,197.20 and punitive/exemplary damages in the

amount of $5,000,000.00. *See* Bank. Opn. 2;[6] Verdict Slip 1;[7] State Docket Sheet A260-A261.

### C.    Bankruptcy Proceedings

On September 3, 2024, Jordan, along with two other petitioning creditors, filed an

Involuntary Chapter 11 Petition against Redmond. *See In re: Redmond*, No. 24-13093 at ECF

No. 1 (Bank. E.D. Pa. Sept. 3, 2024). On December 6, 2024, Jordan initiated adversary

proceedings to determine the dischargeability of debts. *See Jordan v. Redmond*, Adv. No. 24-

00145 (Bank. E.D. Pa. Dec. 6, 2024). Redmond filed an Answer to the Adversary Complaint on

January 6, 2025. *See id.* at ECF No. 5. The next day, the Bankruptcy Judge, Patricia M. Mayer,

issued a scheduling order setting deadlines to, *inter alia,*: (1) complete discovery on or before

---

[4]    The state court's findings of fact and conclusions of law (the "Decision"), which was issued on December 20, 2021, is in Volume II of the Appendix at A036-A049, ECF No. 7.

[5]    It is unclear from the record whether all counts proceeded to verdict as the trial court's opinion is silent on the charges and the parties disagree. *Compare Jordan*, Adv. No. 24-00145 at ECF No. 18, Redmond SJ Mot. 2 ("Counts I and II were stayed as the result of the NBOA Bankruptcy, Count III was denied prior to trial by order of the trial court, and Counts IV and V were dismissed by order of the trial court specifically finding there was no fiduciary duty owed to Plaintiff by the Defendant and no appraiser was appointed."), *with id.* at ECF No. 24, Jordan Opp. SJ 3 (stating that the stay on Counts I and II was lifted and that Count IV was never dismissed). The Bankruptcy Judge did not resolve this dispute, instead finding that "which theories of liability were actually before the state court when the Decision was rendered . . . [was] immaterial." *See id.* at ECF No. 42, Bank. Opn. 15-16.

[6]    The summary judgment Opinion of the Bankruptcy Court dated July 31, 2025, is in Volume I of the Appendix at A005-A023, ECF No. 6.

[7]    The state court's Verdict Slip accompanying the "Decision" issued on December 20, 2021, is in Volume II of the Appendix at A050, ECF No. 7.

March 11, 2025; (2) make pretrial disclosures pursuant to Rule 26(a)(3) before March 17, 2025;

and (3) file motions to amend the pleadings or for summary judgment on or before March 28,

2025. *See id.* at ECF Nos. 6 and 8 (Amended Order).[8]  Redmond summarily agreed to the

scheduling order, but Jordan, believing that he could "establish nondischargeability from [the

trial judge's] findings of fact," filed a brief suggesting that it would be "a more efficient use of

judicial resources for the Court to dispense with discovery, hold an evidentiary hearing on

[Redmond's] intent, and impose a briefing schedule to entertain whether and to what extent

*Grogan* preclusion applies." *See id.* at ECF No. 12.  The Bankruptcy Court determined that

Jordan was essentially asking for an advance determination of whether he would need more

evidence to carry his burden and declined the request as "inappropriate."  *See* Bank. Opn. 3 n.3.

On March 24, 2025, after untimely filing his Rule 26 disclosures, Jordan wrote to the Bankruptcy

Court renewing his request for a discovery conference, again arguing that the state court decision

was alone sufficient to prove his case.  *See Jordan*, Adv. No. 24-00145, ECF No. 6 at 3 n.3.

Redmond responded that Jordan "failed to serve any discovery," "produced only one (1)

document in response to the Request for Production," and, in response to his request for all

witnesses and all documents that he intended to use, "identified one document and no witnesses."

*See id.* at ECF No. 17 at ¶¶ 5, 7, and 15.

On March 28, 2025, the last day to file summary judgment motions, Redmond filed a

Motion for Summary Judgment, *see id.* at ECF No. 18, Jordan did not.  However, a month later,

in his brief opposing summary judgment, Jordan argued that the Bankruptcy Court should grant

---

[8]      The Order stated: "A motion for summary judgment shall include a separate statement of
those material facts that the movant contends are not in dispute with supporting citations to the
record. Failure to comply with this requirement shall be grounds for summary denial of the
motion." *See Jordan*, Adv. No. 24-00145 at ECF No. 8, 3 n.3.

summary judgment in his favor. *See id.* at ECF No. 24 at 18-22. The Bankruptcy Court expressly refused to consider Jordan's request in its Opinion dated July 31, 2025, because the request was untimely and did not include a separate statement of undisputed facts, both in violation of the scheduling order. *See* Bank. Opn. 4 n.4. In the same Opinion, the Bankruptcy Court granted Redmond's Motion for Summary Judgment. That Opinion explained there were two distinct questions to be answered: (1) the extent of the evidentiary record available to Jordan and (2) whether a material factual dispute remained for trial regarding Jordan's ability to prove non-dischargeability of the debt. *See id.* at 6.

As to the first question, the Bankruptcy Court found that "[d]ue to Jordan's apathy throughout discovery and repeated failure to comply with deadlines, his evidence in his case-in-chief is limited to the [state court] Decision." *See id.* at 8 (noting that "Jordan has repeatedly expressed his belief that the Decision is all that is needed for him to succeed on a finding of non-dischargeability" but that Jordan "himself acknowledged early on that if the Court ruled against him on issue preclusion, discovery would be necessary"). The Bankruptcy Court explained that "discovery ha[d] closed and it would be prejudicial to [Redmond] to now allow Jordan to rely on anything other than the Decision and the facts contained within that document when evaluating this request for summary judgment." *Id.*

In answering the second question, the Bankruptcy Court identified three (3) logical subsets of Jordan's nondischargeability claims: (1) claims under § 523(a)(4) that require a finding of a fiduciary relationship; (2) claims under § 523(a)(2)(A) and (a)(4) that require fraudulent intent by Redmond, and (3) claims under § 523(a)(6) that require "willful and malicious" conduct. *See id.* at 10. As to the first subset, the Bankruptcy Court determined that all claims under § 523(a)(4) require that Redmond was acting in fiduciary relationship. *Id.*

However, the Bankruptcy Court concluded that the state court Decision could not support a finding by a preponderance of the evidence that Redmond was acting in a fiduciary capacity when the debts were incurred because the Decision made no such determination, nor did it use the term "fiduciary" or "trust."[9] *See id.* at 10-11 (explaining that the term "fiduciary" in § 523(a)(4) is given a narrower understanding such that even an explicit finding of a fiduciary relationship by the state court, without more, would be insufficient for issue preclusion to apply). *See id.* The Bankruptcy Court recognized that Redmond was acting as a fiduciary of NBOA but found no facts in the Decision to suggest that Redmond breached that duty or that the debt to Jordan was incurred as a result of any such breach. *See id.* at 11-12. The Bankruptcy Court concluded that because Jordan offered no other evidence, there were no material facts in dispute to preclude summary judgment for Redmond on the issue of fiduciary capacity. *See id.*

Next, the Bankruptcy Court considered the dischargeability claims under § 523(a)(2)(A) and (a)(4), explaining that each section requires fraudulent intent by Redmond. *See id.* at 12-13 (stating § 523(a)(2)(A) requires that the debtor made false representations "with the intent and purpose of deceiving" and § 523(a)(4) requires that the debtor appropriated property for his own use "with fraudulent intent"). The Bankruptcy Court determined that the "state court Decision includes no findings of fraudulent intent or facts that would support such a finding." *Id.* at 12. It rejected Jordan's argument (that the term "misappropriation" is essentially synonymous with embezzlement) based on its review of Pennsylvania case law under which "misappropriation is used almost exclusively in the context of intellectual property and trade secrets, irrelevant to

---

[9] The Bankruptcy Court noted that in a separate order, the trial court held there was no fiduciary duty by a 50% shareholder to another 50% shareholder, which the Bankruptcy Court found supported its conclusion. *See* Bank. Opn. 11-12 (citing *Jordan*, Adv. No. 24-00145, ECF No. 18 at Ex. D, 22).

Case 24-00145-amm Doc 59 Filed 05/05/26 Entered 05/14/26 15:05:21 of Desc Main
Case 5:26-cv-04712-JFL Document 10 Filed 05/05/26 Page 7 of 32
Document Page 8 of 33

present purposes." *Id.* ("When the term is used outside that context, the word does not carry any clear substantive legal meaning."). The Bankruptcy Court also determined that while the state court's findings that, *inter alia*, Redmond acted "ultra vires to freeze Jordan out of NBOA and keep all benefits of NBOA for himself" and "knowingly and intentionally lied to [his accountant] to induce the materially false statement on the 2014-2017 NBOA returns. . ." were helpful in understanding why Redmond was found liable, "they do not prove fraudulent intent regarding the debt incurred to Jordan." *See id.* at 15 (citing the Decision). The Bankruptcy Court reasoned that regardless of the theory of liability at trial, the trial judge, Timothy J. Rowley, "limited the Decision to something less than fraud." *Id.* at 16 (reasoning that the trial judge, who often adopted Jordan's proposed language verbatim except for the removal of the word "fraudulently," never used the word "fraudulently" despite Jordan including this word seventeen times in his proposed findings). In fact, the Decision added emphasis to paragraphs 42 through 44, which detailed how Redmond breached the shareholder agreement with Jordan, which the Bankruptcy Court determined did not suggest fraud. *See id.* (citing Decision ¶¶ 42-44). The Bankruptcy Court concluded that in the absence of any other evidence that Redmond possessed the necessary fraudulent, there were no material facts in dispute precluding summary judgment. *See id.* at 17.

Finally, the Bankruptcy Court explained that for purposes of § 523(a)(6), willful and malicious injury requires a creditor to show the harm was intentionally or purposefully inflicted, as recklessly or negligently inflicted harms are insufficient. *See id.* (noting that the award of punitive damages was not dispositive). For the same reasons for finding the absence of fraudulent intent, the Bankruptcy Court concluded that the Decision was devoid of evidence to show the state of mind. *See id.* at 18 ("Rather, we are again left with an ambiguous state court opinion that is best read as a finding of conversion and/or breach of contract."). Because Jordan

had no other evidence, the Bankruptcy Court concluded there are no material facts in dispute to
preclude summary judgment for Redmond.

Summary judgment was entered in favor of Redmond on all counts.

**D.      Instant Appeal**

Jordan initiated the above-captioned action on August 14, 2025, by filing a Notice of
Appeal from the Bankruptcy Court's summary judgment opinion and order dated July 31, 2025.
Jordan filed a supporting brief and the record on appeal on October 10, 2025. *See* ECF Nos. 6-7.
Jordan argues: (1) the Bankruptcy Court erred by denying his request for summary judgment; (2)
the Bankruptcy Court committed reversible error by declining to give the state court Decision
preclusive effect and by finding that it did not establish dischargeability; (3) alternatively, if the
Decision did not satisfy issue preclusion, then the Bankruptcy Court committed reversible error
by granting summary judgment in favor of Redmond instead of sending the case to trial; and (4)
the Bankruptcy Court erred by allegedly "imposing the equivalent of a discovery sanction on
Jordan, depriving him of an opportunity to be heard, and failing to apply the mandatory six
factors under *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984), including the
indispensable element of prejudice." *See* Brief 16-17. Despite repeated directions and a Court
order, *see* ECF Nos. 3 and 9, Redmond failed to file an Appellee brief.

**III.   STANDARDS OF REVIEW**

**A.      Bankruptcy Appeal**

A district court has jurisdiction to hear appeals from the bankruptcy court pursuant to 28
U.S.C. § 158. On appeal, a district court reviews a bankruptcy court's findings of fact applying a
"clearly erroneous" standard of review. *Am. Flint Glass Workers Union v. Anchor Resolution
Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). "Factual findings may only be overturned if they are

050426

completely devoid of a credible evidentiary basis or bear[] no rational relationship to the

supporting data." *Pension Transfer Corp. v. Beneficiaries under the Third Amendment to

Fruehauf Trailer Corp. Ret. Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 210 (3d

Cir. 2006) (cleaned up); *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir.

1995) ("It is error for a district court, when acting in the capacity of a court of appeals, to make

its own factual findings."). A district court reviews the bankruptcy court's legal determinations

de novo (plenary review). *See Sovereign Bank v. Schwab*, 414 F.3d 450, 452 (3d Cir. 2005).

The district court "must break down mixed questions of law and fact, applying the appropriate

standard to each component." *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989). A

bankruptcy court's exercise of discretion is reviewed for abuse thereof. *See In re Goody's

Family Clothing Inc.*, 610 F.3d 812, 816 (3d Cir. 2010). "A bankruptcy court abuses its

discretion when its ruling rests upon an error of law or a misapplication of law to the facts." *Lee

v. 6209 Mkt. St., LLC*, 652 B.R. 721, 726 (E.D. Pa. 2023) (citing *In re O'Brien Envt'l Energy,

Inc.*, 188 F.3d 116, 122 (3d Cir. 1999)). "The question of whether a debt correctly falls within

section 523(a)[] is a question of law." *McQueen v. Macri (In re Macri)*, 642 F. App'x 128, 129

(3d Cir. 2016).

### B.     Exceptions to Discharge of Debt

The Bankruptcy Code employs a "fresh start" policy, but "the Act limits the opportunity

for a completely unencumbered new beginning to the honest but unfortunate debtor." *Grogan v.

Garner*, 498 U.S. 279, 286-87 (1991) (internal quotations omitted). "Section 523(a) of the

Bankruptcy Code provides that a discharge in bankruptcy shall not discharge an individual

debtor from certain kinds of obligations. . . ." *Id.* at 280. Specifically, bankruptcy "does not

discharge an individual debtor from any debt. . .

050426

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

. . .

(4) for fraud or defalcation[10] while acting in a fiduciary capacity, embezzlement, or larceny;

. . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a).  Although the "validity of a creditor's claim is determined by rules of state law, . . . the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code." *Grogan*, 498 U.S. at 283-84 (internal citations omitted).  "Exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors." *In re Cohn*, 54 F.3d at 1113.  "The party objecting to discharge has the burden of proof by a preponderance of the evidence." *Cho v. Park (In re Joon Hyan Park)*, 682 F. App'x 88, 92 (3d Cir. 2017) (citing *Grogan*, 498 U.S. at 289; Fed. R. Bankr. P. 4005).

### C.     Issue Preclusion[11]

"Issue preclusion, formerly titled collateral estoppel, proscribes relitigation when the identical issue already has been fully litigated." *Bd. of Trs. of Trucking Emps. of N.J. Welfare Fund, Inc.-Pension Fund v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992); *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999).  Issue preclusion "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again

---

[10]     "[T]he term 'defalcation' is not defined in the Bankruptcy Code. However, in *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2nd Cir. 1937), the court concluded that 'when a fiduciary takes money upon a conditional authority which may be revoked and knows at the time it may, he is guilty of a 'defalcation' though it may not be 'fraud' or an 'embezzlement,' or perhaps not even a 'misappropriation'.' *Central Hanover*, 93 F.2d at 511-12." *Cadle Co., II, Inc. v. Hartman (In re Hartman)*, 254 B.R. 669, 672 (Bankr. E.D. Pa. 2000).

[11]     "The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts." *See also Katchen v. Landy*, 382 U.S. 323, 334 (1966).

be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443

(1970); *Schiro v. Farley*, 510 U.S. 222, 232 (1994). "It has been established that collateral

estoppel [issue preclusion] applies in nondischargeability actions in bankruptcy court, even with

respect to previous state court judgments." *Commander v. LoGuidice (In re LoGiudice)*, No. 13-

cv-02612-FLW, 2013 U.S. Dist. LEXIS 175184, at *8 (D.N.J. Dec. 12, 2013) (citing *Wolstein v.*

*Docteroff (In re Docteroff)*, 133 F.3d 210, 214 (3d Cir. 1997)). "The prerequisites for the

application of issue preclusion are satisfied when: (1) the issue sought to be precluded [is] the

same as that involved in the prior action;[12] (2) that issue [was] actually litigated; (3) it [was]

determined by a final and valid judgment; and (4) the determination [was] essential to the prior

judgment." *Peloro v. United States*, 488 F.3d 163, 174-75 (3d Cir. 2007) (cleaned up). The

party asserting issue preclusion bears the burden of proving its applicability to the case at hand.

*See Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d 139, 147 (3d Cir. 2007). Where issue

preclusion applies, the federal court is bound to accept the state court's answer to state law

questions, "as well as the factual and legal findings necessary to that answer." *Instructional Sys.*

*v. Comput. Curriculum Corp.*, 35 F.3d 813, 823 (3d Cir. 1994).

"There are at least two (2) distinct methodologies available to a bankruptcy court in

nondischargeability proceedings when evaluating an argument that the issues determined in a

prior proceeding are preclusive." *Beard Research, Inc. v. Kates (In re Kates)*, 485 B.R. 86, 102

(Bankr. E.D. Pa. 2012). Relevant here is the "second methodology, usually employed when the

prior tribunal made express findings of fact and conclusions of law, . . . [which] involves what

might be characterized as an 'inductive' rather than a 'deductive' approach." *Id.* at 103.

---

[12]    "To defeat a finding of identity of the issues for preclusion purposes, the difference in the
applicable legal standards must be 'substantial.'" *Raytech Corp. v. White*, 54 F.3d 187, 191 (3d
Cir. 1995) (citing 1B Moore's Federal Practice P .443[2] at 572)).

Focusing on the specific findings in the prior proceeding that are entitled to preclusive effect, "the court evaluates whether the preclusive facts, considered in the aggregate, establish any or all of the elements of a §523(a) claim." *Id.* "Under either analysis, the court must always consider whether the burdens of proof or the substantive legal standards in the bankruptcy proceeding differ from those of the prior proceeding, who prevailed in the earlier matter and which party in the bankruptcy proceeding seeks to invoke the issue preclusion doctrine." *Id.*

## IV. ANALYSIS[13]

### A. The Bankruptcy Court properly rejected Jordan's request for summary judgment.

Jordan's assertion that the Bankruptcy Court was "obligated" to consider his request for summary judgment and "committed reversible error by disregarding it," *see* Brief 18-19, is wrong. Jordan cites Rule 56(f)(1) of the Federal Rules of Civil Procedure to support his argument but ignores the plain language in the Rule. Rule 56(f)(1) provides: "After giving notice and a reasonable time to respond, the court **may**: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(1) (emphasis added). Nothing in this Rule "obligated" the Bankruptcy Court to consider Jordan's untimely request for summary judgment, which was included only in his opposition brief. *See id.*; Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court **may**, for good cause, extend the time . . . **on motion** made after the time has expired if the party failed to act because of excusable neglect."

---

[13] When deciding the appeal from a bankruptcy court's decision, a district court is not required to issue a separate opinion. *See In re Kasco*, No. 07 C 7270, 2008 U.S. Dist. LEXIS 123993, at *1-2 (N.D. Ill. Aug. 14, 2008) (affirming and adopting, without separate opinion, the bankruptcy court's opinion).

(emphasis added)). Moreover, Jordan was not prejudiced by the Court's failure to consider his untimely request. *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) ("We will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." (cleaned up)). As will be discussed herein, summary judgment was properly granted in favor of Redmond on two of the discharge exceptions and, as to the third, there exists a genuine dispute of material fact for trial. Accordingly, the Bankruptcy Judge acted well within her discretion in refusing to consider Jordan's request for summary judgment because it was made thirty-one (31) days after the deadline expired to file a motion for summary judgment and, also, did not include a separate statement of undisputed material facts as specifically required by the scheduling order. *See id.*; *Amboy Bancorporation v. Bank Advisory Grp., Inc.*, 432 F. App'x 102, 112-13 (3d Cir. 2011) (finding that the court did not abuse its discretion in denying the motion for summary judgment as untimely); *United States v. Koss*, No. 99-61, 1999 U.S. Dist. LEXIS 14386, at *2 n.1 (E.D. Pa. Sep. 21, 1999) (finding that the party's failure to file a separate, numbered list of undisputed facts with the summary judgment motion, as the scheduling order required, was "sufficient grounds to deny his motion for summary judgment"). The Bankruptcy Court's decision not to consider Jordan's summary judgment request is adopted and affirmed.

**B.     The Bankruptcy Court's decision to limit Jordan's evidence to the state court Decision is affirmed.**

Jordan suggests that the Bankruptcy Court erred by "improper handling of the discovery phase," but does not identify any allegedly erroneous discovery rulings during the discovery phase.[14] *See* Brief 46-47 (citing the bankruptcy court's finding in the summary judgment

---

[14]     To the extent Jordan might be challenging the Bankruptcy Judge's refusal to hold a discovery conference, this Court agrees with and adopts the Bankruptcy Judge's resolution of

13

opinion that "[d]ue to Jordan's apathy throughout discovery and repeated failure to comply with deadlines, his evidence in his case-in-chief is limited to the Decision"). To the extent his appeal is based, not on the Bankruptcy Judge's conduct *during* the discovery process, but on her ruling in the summary judgment opinion that limited the evidence on which Jordan could rely (to the Decision),[15] it is denied. Jordan contends that the Bankruptcy Court erred by essentially imposing a discovery sanction on him, depriving him of an opportunity to be heard, and failing to apply the *Poulis* factors. *See* Brief 16-17, 46-53.

Initially, this Court finds that Jordan's assertion that the Bankruptcy Judge erred by never applying the allegedly "mandatory *Poulis* factors," *see* Brief 47, is meritless because *Poulis* has no relevance to Jordan's case. The factors outlined by the Supreme Court in *Poulis* must be applied when a judge "dismisses" a case as a sanction, often for the plaintiff's "failure to meet court-imposed deadlines and other procedural requisites." *See Poulis*, 747 F.2d at 865, 870 ("The above factors should be weighed by the district courts in order to assure that the 'extreme' sanction of dismissal or default is reserved for the instances in which it is justly merited.").

---

this issue. *See* Bank. Opn. 3-4 and n.3 (explaining that Jordan's request for a discovery conference was "seemingly asking for an advance determination of whether he would need more evidence or not to carry his burden" and was denied as "inappropriate"). There was no abuse of discretion. *See In re Fine Paper Antitrust Litig.*, 685 F.2d at 817-18 (noting an appellant's "heavy burden" on discovery issues and stating that the appellate court will not interfere with the lower court's "control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant" (internal quotations omitted)).

[15] The additional evidence Jordan submitted to the Bankruptcy Court in opposition to summary judgment consisted of: (1) Jordan's proposed findings of fact and conclusions of law submitted to the state trial court, (2) a state court order, (3) the state court docket sheet, (4) Jordan's deposition dated September 30, 2024, which was taken in Redmond's bankruptcy case (not the adversary proceeding), (5) an email exchange between counsel dated January 21, 2025, about discovery, and (6) a few pages of the transcript of the bench trial on September 20/21, 2021, pertaining to the trial judge's request for proposed findings of fact and conclusions of law. *See Jordan*, Adv. No. 24-00145, ECF No. 24-1.

14

050426

However, Jordan's case was not dismissed for his failure to conduct discovery; rather, the
Bankruptcy Court granted summary judgment in Redmond's favor after a thorough review of the
evidence and application of the standard of review for summary judgment motions. *See* Bank.
Opn. 5-6.

To the extent the Bankruptcy Court essentially imposed a discovery sanction on Jordan, it
did not abuse its discretion. *See Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir.
1995) (explaining that the "imposition of sanctions for abuse of discovery under Fed. R. Civ.
Pro. 37 is a matter within the discretion of the trial court"). Discovery sanctions are governed by
Rule 37, which provides: "If a party fails to provide information or identify a witness as required
by Rule 26(a)[16] or (e), the party is not allowed to use that information or witness to supply
evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is
harmless." Fed. R. Civ. P. 37(c)(1). *See also Newman*, 60 F.3d at 156 ("Rule 37 is written in
mandatory terms, and is designed to provide a strong inducement for disclosure of Rule 26(a)
material." (internal quotations omitted)). To determine whether a failure to disclose is harmless,

---

[16] Rule 26(a) provides, in relevant part:
. . . a party must provide to the other parties and promptly file the following
information about the evidence that it may present at trial other than solely for
impeachment:
(i) the name and, if not previously provided, the address and telephone
number of each witness—separately identifying those the party expects to
present and those it may call if the need arises;
(ii) the designation of those witnesses whose testimony the party expects to
present by deposition and, if not taken stenographically, a transcript of the
pertinent parts of the deposition; and
(iii) an identification of each document or other exhibit, including
summaries of other evidence—separately identifying those items the party
expects to offer and those it may offer if the need arises.
Fed. R. Civ. P. 26 (a)(3)(A).

050426

the court must consider several factors. *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710,

719 (3d Cir. 1997), *cert denied* 522 U.S. 1128 (1998). These factors are:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order.

*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977).

There is one[17] additional factor: (5) the importance of the excluded evidence. *See id.*;

*Konstantopoulos*, 112 F.3d at 719.

Although the Bankruptcy Judge did not specifically mention the factors, her Opinion

shows that she took these considerations into account. She reasoned that because discovery had

closed, "it would be prejudicial to [Redmond] to now allow Jordan to rely on anything other than

the Decision and the facts contained within that document when evaluating this request for

summary judgment." Bank. Opn. 8 (considering prejudice and ability to cure). The Bankruptcy

Judge noted "now is the time [for Jordan] to demonstrate that a trial is, in fact, necessary." Bank.

Opn. 8 n.7 (considering, essentially, the extent to which waiver of the rule against calling

unlisted witnesses would disrupt the orderly and efficient trial of the case). The Bankruptcy

Court stated that "[r]ather than take discovery to bolster his case, Jordan defaulted on multiple

deadlines and failed to respond to [Redmond's] requests," and commented on "Jordan's apathy

throughout discovery and repeated failure to comply with deadlines." *See id.* at 7 (considering

willfulness and bad faith). The Bankruptcy Judge also noted that Jordan "repeatedly expressed

---

[17] *But see Vehicle IP, LLC v. AT&T Mobility LLC*, 227 F. Supp. 3d 319, 325 (D. Del. 2016) (considering also the "explanation for the failure to disclose").

his belief that the Decision is all that is needed for him to succeed on a finding of non-

dischargeability" *See id.* at 8 (considering surprise). The Bankruptcy Court explained:

> In response to the Defendant's request for identification of persons with discoverable information, Jordan summarily referenced the Decision and state court docket. *See* doc. # 18, Ex. G at 4. Jordan's answers to the interrogatories were generally of the same dismissive nature; interrogatories concerning exhibits or documents to be produced at trial, communications and documents Jordan intended to use to prove fraudulent intent, and facts related to contentions of non-dischargeability were all met with the same response: "Read the [Decision]." *See id.* at 5-8.

*Id.* (citing *Jordan*, Adv. No. 24-00145, ECF No. 18-8 (Jordan's Answers to Redmond's

Interrogatories dated March 7, 2025)). This Court finds that the Bankruptcy Judge's exclusion of

all evidence other than the state court Decision was not an abuse of discretion. *See Semper v.*

*Santos*, 845 F.2d 1233, 1238 (3d Cr. 1988) (holding that the "trial court's exclusion of testimony

because of the failure of counsel to adhere to a pretrial order will not be disturbed on appeal

absent a clear abuse of discretion").

In considering the factors, this Court adopts the reasoning of the Bankruptcy Court:

Jordan's failure to comply with the Bankruptcy Judge's scheduling order was willful and in bad

faith; Redmond was surprised by Jordan's late attempt to rely on additional evidence[18] and had

no ability to cure any prejudice. Notably, one of the additional pieces of evidence submitted by

Jordan in opposition to the summary judgment motion was his deposition taken in Redmond's

bankruptcy case. Although Redmond was aware of this deposition, which reduces his prejudice,

he made it clear to Jordan in the adversary proceedings that he wanted to conduct another

---

[18]     *See also Jordan*, Adv. No. 24-00145, ECF No. 18-6 (letter from Jordan's counsel dated March 13, 2025, in response to an email from Redmond's counsel asking him "to confirm that you will not be offering any witness. . . exhibit, document or other evidence other than the Decision," stating that if the case proceeds to trial Jordan intends to admit only the state court Decision and to call Redmond to testify as to his intent).

17
050426

deposition of Jordan, to which Jordan objected. *See Jordan*, Adv. No. 24-00145, ECF No. 18-7

(letter dated March 24, 2025, from Jordan's counsel to the Bankruptcy Court objecting to the

request of Redmond's counsel to "depose Jordan again" because "there is no relevant

information that could possibly come out of a deposition of Jordan"). Allowing Jordan to later

rely on this deposition was therefore prejudicial and could not be cured without reopening

discovery. If discovery were reopened the dispositive motions deadline would have been

extended, which would have pushed the trial and the ability of the Bankruptcy Court to reach a

prompt decision on summary judgment resolving the case. The first four factors therefore weigh

in favor of the discovery sanction. Moreover, after an independent review of the additional

evidence attached to Jordan's opposition to the summary judgment motion, this Court finds that

the final factor also favors the discovery sanction because the excluded evidence is not important

as it does not change the outcome of the case. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d

254, 298 (3d Cir. 2012) (stating that the importance of the excluded evidence is "often the most

significant factor" when deciding discovery sanctions). For these reasons, the Bankruptcy

Judge's decision to limit Jordan's evidence to the state court Decision is adopted and affirmed.[19]

### C.     The Bankruptcy Judge did not abuse her discretion by denying Jordan leave to file a sur-reply.

Jordan contends that the Bankruptcy Court "deprived Jordan of an opportunity to be

heard by refusing to accept his Sur-Reply." *See* Brief 47. Jordan sought leave to file a sur-reply

---

[19]     Because the additional evidence does not change the outcome of the case, even if the
Bankruptcy Court had erred in excluding the additional evidence, any such error would have
been harmless. *See Novartis Pharm. Corp. v. Adesanya*, 645 B.R. 733, 768 (E.D. Pa. 2022)
(affirming that bankruptcy court's decision because its error was harmless); *N.Y.C. Shoes, Inc. v.
Best Shoe Corp.*, 106 B.R. 58, 62 (E.D. Pa. 1989) (concluding that the bankruptcy court
exercised its discretion by allowing a witness to invoke the protection of the Fifth Amendment
and noting that even if the bankruptcy court had erred in its refusal to compel testimony, the
error was harmless).

to address: (1) allegedly new arguments about discovery violations, (2) an allegedly false statement in counsel's brief as to what the Decision referenced, and (3) purported misstatements of the law regarding *In re Feng Li*, 610 Fed Appx 126 (3d Cir 2015). *See Jordan*, Adv. No. 24-00145 at ECF No. 32, 1. As to the first area, the only new discovery-related argument in the reply brief is that Jordan failed to timely comply with the Rule 26(a)(3) disclosures. *See Jordan*, Adv. No. 24-00145, at ECF No. 30, 2. There was no need for a sur-reply to address this assertion because the untimeliness of the Rule 26(a)(3) was clear from the record itself.[20] Moreover, this Court has reviewed Jordan's proposed sur-reply, in which he admits his disclosures were filed late, and his argument essentially boiled down to "So what." *See Jordan*, Adv. No. 24-00145 at ECF No. 31, 4 ("The Court ordered us to produce our Rule 26(a)(3) disclosures by March 18, 2025. Jordan filed on March 24th. So what? Defendant doesn't show prejudice."). The Bankruptcy Judge did not "deprive" Jordan of an opportunity to be heard. All other discovery arguments were also raised in Redmond's brief in support of his motion for summary judgment, which Jordan could have addressed in his opposition brief. *Compare Jordan*, Adv. No. 24-00145, at ECF No. 18, 4-5, *with id.* at ECF No. 30, 2-3. Similarly, the remaining two areas also were not new; rather, Redmond replied to (and disagreed with) arguments raised in Jordan's opposition brief. Thus, because Jordan already had his opportunity

---

[20] Jordan's suggestion that Redmond, by raising new issues that he failed to comply with discovery obligations, "sandbag[ed]" Jordan with an untimely motion to compel (or for sanctions), *see* Brief 15, is frivolous. Redmond had no idea until Jordan filed a brief in opposition to the motion for summary judgment on April 28, 2025, that Jordan intended to rely on anything other than the Decision in opposing summary judgment. Redmond's reply was timely filed a month later; accordingly, he did not sandbag Jordan as alleged. Moreover, the day after Jordan filed his Rule 26(a)(3) disclosures, on March 25, 2025, Redmond filed an objection to their untimeliness arguing the Bankruptcy "Court should limit Plaintiff to no witnesses and the one identified document." *See Jordan*, Adv. No. 24-00145 at ECF Nos. 13 and 17, ¶ 16. Jordan was therefore aware of Redmond's objection/argument before he filed his opposition brief.

19
050426

to be heard, a sur-reply would have been repetitive. Because the back-and-forth arguments had to stop and Jordan's argument was heard (or could have been made in the opposition brief), the Bankruptcy Court did not abuse its discretion in denying Jordan's motion for leave to file a sur-reply. *See Est. of Lagano v. Bergen Cnty. Prosecutors Office*, No. 23-1776, 2025 U.S. App. LEXIS 24450, at *12 (3d Cir. Sep. 22, 2025) ("Granting leave to file a sur-reply is a matter left to the sound discretion of the [c]ourt.").

The Bankruptcy Court's Order dated June 11, 2025, denying Jordan's Motion for Leave to File Sur-Reply is affirmed.

**D.     The Bankruptcy Court's conclusion that the state court Decision was insufficient for issue preclusion because it did not establish an exception to discharge is affirmed in part and reversed in part.**

While noting NBOA's disagreement about the identity of the issue presented, the Bankruptcy Court offered no opinion as to this prerequisite for issue preclusion because it found the Decision did not establish all the elements necessary for an exception to discharge, which in itself barred issue preclusion. *See* Bank. Opn. 9, 11, 13-18, 22 (determining that the findings in the Decision about fiduciary, misappropriation, fraudulent intent, and willful/malicious were ambiguous). *See also In re Docteroff*, 133 F.3d at 215 ("Collateral estoppel is applicable if the facts established by the previous judgment in the [state] court . . . meet the requirements of nondischargeability listed in 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6), namely that the money was obtained by fraud, embezzlement, or willful conduct."). Jordan appeals from this conclusion, arguing that issue preclusion applies because the state court Decision "sets forth all dispositive facts for embezzlement or larceny under Section (a)(4), as well as defalcation within a fiduciary capacity, and willful and malicious injury under Section (a)(6)[, w]here either standard is met, the entire debt is nondischargeable." *See* Brief 16-17. Jordan cites to, *inter alia*,

20
050426

the trial judge's findings that Redmond, as corporate officer for NBOA, acted deliberately, knowingly, and wrongfully when he misappropriated money belonging to Jordan to keep all benefits for himself. *See id.* 20-21. Each alleged discharge exception will be discussed in turn.

### 1. 11 U.S.C. § 523(a)(2)(A) (fraud exception)

In order for a debt to be declared non-dischargeable under § 523(a)(2)(A), a plaintiff must prove that: (1) the debtor made a false representation; (2) at the time of the representation, the debtor knew it was false; (3) the false representation was made with the intent and purpose of deceiving the creditor; (4) the creditor justifiably relied upon the representation; and (5) the creditor sustained damage as a proximate result of the misrepresentation. *See In re Ritter*, 404 B.R. 811, 822 (Bankr. E.D. Pa. 2009). *See also Field v. Mans*, 516 U.S. 59, 74 (1995) (holding that "§ 523(a)(2)(A) requires justifiable, but not reasonable, reliance"). "[O]nly debt that is obtained by fraudulent conduct is within the scope of § 523(a)(2)(A). And, the alleged fraudulent conduct and/or misrepresentation must be made by the debtor to the creditor concurrent with the transfer." *Corso v. Walker*, 449 B.R. 838, 848 (W.D. Pa. 2011) (internal citation and quotations omitted).

Redmond's only false representation mentioned in the state court Decision was made to his accountant, C. Malcolm Smith.[21] *See* Decision ¶ 50. The Decision does not state that Redmond made any false representations to Jordan, nor is there any finding that Jordan relied upon any false statements by Redmond. There is also no suggestion that Redmond lied when he initially agreed to become a 50/50 shareholder with Jordan. To the contrary, the Decision

---

[21] The Decision also found that Redmond falsely claimed Plan Z, LLC was not a stockholder and used Smith to file false tax returns so Redmond could keep the money for himself instead of paying Plan Z, LLC. *See* Decision ¶ 36. However, there is no suggestion that this false claim was made to Jordan or that Jordan relied upon the false claim about Plan Z, LLC.

21

050426

implies that Redmond only later decided to withhold money from Jordan after NBOA started making money. *See id.* ¶ 33. Because Jordan did not offer any evidence other than the Decision,[22] the Bankruptcy Court correctly concluded there was no evidence showing the debt was dischargeable under § 523(a)(2)(A) and that the issue preclusion doctrine does not apply. *See Va. Commercial Fin., LLC v. Lewis (In re Lewis)*, Nos. 5:22-00574-MJC, 5:22-00028-MJC, 2023 Bankr. LEXIS 2304, at *26-28 (Bankr. M.D. Pa. Sep. 19, 2023) (granting summary judgment in favor of Debtor because the creditor failed to present any evidence that the loan "was 'obtained' by false representations or a materially false writing about Debtor's financial condition"); *In re Grasso*, 562 B.R. at 885 (explaining that issue preclusion applies "if the facts established by the [Decision] meet the requirements for denying discharge"). The entry of summary judgment as to the fraud exception is affirmed.

### 2. 11 U.S.C. § 523(a)(4) (embezzlement)

As to the discharge exception in 11 U.S.C. § 523(a)(4), Jordan argues that a fiduciary relationship is not required for acts of embezzlement or larceny; rather, the fiduciary requirement only pertains to fraud or misappropriation. *See* Brief 22-23 (citing *T. Levy Assocs. v. Kaplan (In re Kaplan)*, 608 B.R. 443, 456 (Bankr. E.D. Pa. 2019) ("[T]he existence of a fiduciary relationship is not required for the non-dischargeability of a debt owing to larceny or

---

[22] This Court has also reviewed Jordan's additional exhibits attached to his opposition to the motion for summary judgment. *See Jordan*, Adv. No. 24-00145, ECF No. 24-1. Although he testified at his deposition that Redmond initially refused to acknowledge that Jordan was an equal shareholder in NBOA, lied under oath about creditors, and made inaccurate statements during discovery about creditors and assets, *see id.* at Ex. 4, Dep. 38:1-5; 42:20-25, 64:2-6, Jordan testified that such falsehoods led him to file the involuntary bankruptcy petition in order to collect on the debt, *see id.* 64:7-15. By Jorden's own testimony, he did not rely on the misrepresentations, nor did he sustain damage as a result because the debt had already accrued. Accordingly, nothing in Jordan's deposition supports an exception to discharge under § 523(a)(2)(A) or creates a genuine dispute of fact precluding summary judgment.

embezzlement.")).  To the extent the Bankruptcy Court's Opinion determined that a fiduciary relationship is needed under § 523(a)(4), it is not adopted.  *See id.*

However, that does not end the inquiry because embezzlement under § 523(a)(4) requires "fraudulent intent," which the Bankruptcy Court also found to be lacking.  "To prove that debtor committed embezzlement within the meaning of § 523(a) (4), [the petitioner] must establish that: (1) debtor was entrusted; (2) with property; (3) of another; (4) which debtor appropriated for his own use; and (5) with fraudulent intent."  *See Ginsburg ex rel. Vertical Grp., Inc. v. Birenbaum (In re Birenbaum)*, Nos. 05-20640 BM, 05-2506 BM, 2006 Bankr. LEXIS 1335, at *22 (Bankr. W.D. Pa. July 6, 2006).  "Fraudulent intent is defined as intent to defraud, to deceive, acting in bad faith."  *In re Kaplan*, 608 B.R. at 457 (cleaned up).

Jordan argues that misappropriation, as found by the state trial judge, is synonymous with embezzlement.  *See* Brief 23-24.[23]  The Bankruptcy Court rejected this argument based on its review of Pennsylvania case law under which "misappropriation is used almost exclusively in the context of intellectual property and trade secrets, irrelevant to present purposes."  Bank. Opn. 12.  The Bankruptcy Court further explained that "[m]isappropriation is often used by courts to describe an action not inclusive of fraudulent or otherwise illegal or wrongful intent."  *Id.* at 14

---

[23]     Jordan's contention that "this case is controlled by the Third Circuit's decision in the case of *In re Feng Li (Feng Li II)*, 610 F. App'x 126 (3d Cir. 2015)," *see* Brief 24, is unavailing.  As the Bankruptcy Judge explained, "the debtor's argument before the Third Circuit was that collateral estoppel could not apply because the New Jersey Supreme Court lacked jurisdiction to enter the disbarment. [*In re Feng Li*, 610 F. App'x] at 29.  The issue of whether use of the word 'misappropriation' alone falls within the ambit of § 523(a)(4) was neither raised nor resolved."  Bank. Opn. 14-15.  Moreover, this Court notes that the Third Circuit never decided whether discharge under § 523(a)(4) was appropriate solely under the embezzlement theory; rather, the court concluded that because Li "knowingly misappropriated *client funds*," he "engaged in 'fraud or defalcation while acting in a fiduciary capacity, embezzlement, *or* larceny' pursuant to 11 U.S.C. § 523(a)(4)."  *Id.* at 129 (emphasis added).  Furthermore, the court concluded that, alternatively, Li was properly denied a discharge pursuant to 11 U.S.C. § 727(a)(4) for making a false oath in connection with the bankruptcy case. *See id.* at 129-30.

n.10 (citing cases). The Bankruptcy Court concluded that the state court judge "limited the

Decision to something less than fraud." *Id.* at 16. The Bankruptcy Court reasoned that because

the state court Decision "goes out of its way to indicate that it is adopting nearly all of Jordan's

proposed facts, . . . the few alterations made by the state court carry significance." *Id.*[24] The

Bankruptcy Court found "most remarkable" the state court judge's choice to "never used the

word 'fraudulently' despite Jordan including this word seventeen times in his proposed

findings." *Id.* "In many instances, the Decision adopts Jordan's proposed language verbatim,

save for the removal of the word 'fraudulently,'" which the Bankruptcy Court determined

"clearly indicate[s] that whatever the source of liability was, it was not premised on a finding of

fraud or fraudulent intent." *Id.* Because the Decision does not establish that Redmond acted

with fraudulent intent, the Bankruptcy Judge determined that issue preclusion does not apply.

This Court agrees. In the absence of any evidence of fraudulent intent,[25] the Bankruptcy

Court correctly found that there was no evidence showing the debt was dischargeable under §

523(a)(4). The entry of summary judgment as to this exception is affirmed.

### 3.     11 U.S.C. § 523(a)(6) (willful and malicious injury)

"To establish that a debt should not be discharged under Section 523(a)(6) of the

Bankruptcy Code, the creditor must show by a preponderance of the evidence that the debt at

issue resulted from an injury that was both 'willful and malicious.'" *Grimes v. Landy (In re*

*Landy)*, Nos. 24-17724, 24-01617, 2025 Bankr. LEXIS 3247, at *12 (Bankr. D.N.J. Dec. 15,

2025) (citing 11 U.S.C. § 523(a)(6); *Grogan*, 498 U.S. at 279). "'Willful' and 'malicious' are

---

[24]     *See* Decision ¶ 1 ("As will be clear, the Court accepted nearly all of Defendant Jason
Scott Jordan's Corrected Proposed Findings of Fact. . . .").
[25]     This Court has also reviewed Jordan's additional exhibits and finds no evidence of
fraudulent intent. *See Jordan*, Adv. No. 24-00145, ECF No. 24-1.

distinct elements." *In re Kates*, 485 B.R. at 100. "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). "'Malice' refers to actions that are wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." *In re Kates*, 485 B.R. at 101 (citing 4 Collier on Bankruptcy ¶ 523.12 (Alan N. Resnick, Henry J. Sommer eds., 16th ed. 2009) and explaining that "[m]alice does not mean the same thing for nondischargeability purposes under § 523(a)(6) as it does in contexts outside of bankruptcy"). Accordingly, a plaintiff must establish that the debt arose from an injury to the plaintiff "that was: (1) willful (*i.e.*, involving deliberate and intentional conduct), (2) malicious (*i.e.*, wrongful) and (3) intended or substantially certain to cause injury." *Viener v. Jacobs (In re Jacobs)*, 381 B.R. 128, 145 (Bankr. E.D. Pa. 2008).

On appeal, Jordan argues that the Decision shows Redmond decided he did not need Jordan any longer once NBOA was making money and "wrongfully" froze Jordan out. *See* Brief 36-37 (citing Decision ¶ 33). Jordan highlights that the Decision found that Redmond created Bene Market, LLC, and transferred all of NBOA's assets to it for his own personal benefit and to the detriment of Jordan without Jordan's consent. *Id.* (citing Decision ¶ 70 (finding that Bene Market, LLC was an "identical business, . . . engaged in selling the same products, using the same office space and same furniture and equipment" and was a "mere continuation of NBOA for purposes of ownership interest and rights as between Redmond and Jordan")). In addressing specific funds, the Decision found that Redmond "knowingly, wrongfully" took cash from NBOA. *See* Decision ¶ 56. It also found that Redmond "knowingly misappropriated" NBOA funds, paying them to Bene Market LLC. *See id.* ¶ 59. Jordan contends that other courts have

found willful and malicious injury based on such facts. *See* Brief 37 (citing *In re Kates*, 485 B.R. at 110[26]).

The Bankruptcy Court determined that "intentional torts, without more, will not satisfy the willful and malicious standard of §523(a)(6)." Bank. Opn. 18 (citing *In re Coley*, 433 B.R. 476, 499 (Bankr. E.D. Pa. 2010)). The Bankruptcy Court cited *In re Coley* for the holding that "courts have required accompanying 'malicious and willful tortious conduct' to an intentional breach of contract to bring it within the ambit of §523(a)(6))." *Id.* The Bankruptcy Court stated that "conversion alone is not dispositive of the proper intent under §523(a)(6)." Bank. Opn. 17. With these principles in mind, the Bankruptcy Court determined that although the Decision could be "read as a finding of conversion and/or breach of contract," it was not sufficient for Jordan to prove that Redmond acted "deliberately" or "intentionally" or with "the particular 'state of mind' required under the statute." *Id.* at 18.

---

[26] The bankruptcy court in *In re Kates* considered the opinion of the chancery court, which litigated claims, including misappropriation of trade secrets, breach of fiduciary duty, and tortious interference with a contractual relation, between CB (Beard Research, Inc. and CB Research & Development, Inc.) and the debtor (a former employee). The bankruptcy court stated that the chancery court opinion was "replete with findings regarding the Debtor's intent to 'take away business . . . from CB' . . . and 'make CB shut its doors.'" *In re Kates*, 485 B.R. at 110. The bankruptcy court concluded that "[t]hese findings undoubtedly equate to a determination that the Debtor acted wilfully [sic] and maliciously (in the sense of §523(a)(6)) to injure CB by misappropriating its trade secrets and tortiously interfering with its business contracts." *Id.* ("Based on the preclusive facts, no reasonable factfinder could conclude anything other than the Debtor acted deliberately, wrongfully and with the subjective knowledge that his conduct would injure the Plaintiffs."). Accordingly, it determined that CB had established all the elements of nondischargeability under 11 U.S.C. § 523(a)(6). *Id.* The bankruptcy court further concluded that the debtor engaged in a single course of related conduct (willful and malicious behavior) that caused the CB's injuries, making it unnecessary to allocate the compensatory damages award among the different state court claims because the damages, as a whole, were nondischargeable. *See id.* at 111-12.

26

After review, this Court disagrees with many of the Bankruptcy Court's legal conclusions.[27] Although the court in *In re Coley*, discussing the "unsettled area of the law," stated that "some courts have suggested that § 523(a)(6) is limited to injuries arising from tortious activity, as opposed to a mere breach of contract," it also stated that "most courts do not categorically rule out the possibility that a purposeful breach of a contract, in some circumstances, can cause a willful and malicious injury, particularly if the breach is accompanied by a tortious act, such as conversion." *In re Coley*, 433 B.R. at 482, 499. The Bankruptcy Court did not consider the particular circumstances of Redmond's case; rather, it simply referred to its discussion regarding "fraudulent intent" and noted that "[n]owhere in the Decision is there a finding that Jordan's actions were willful and malicious." *See* Bank. Opn. 17.

The Bankruptcy Court's discussion of "fraudulent intent" is not dispositive to whether Redmond had the requisite state of mind for discharge under § 523(a)(6). Although the state court Decision clearly limited its findings to something less than fraud, it does show that Redmond acted willfully.[28] *See, e.g.* Decision ¶¶ 28, 29, 50, 58, 59 (stating that Redmond "changed" the locks to NBOA, "prevented" Jordan from participating in the operations and management of NBOA, "froze" Jordan out of NBOA, "refused" to provide Jordan with NBOA

---

[27]    The Bankruptcy Court also determined that the award of punitive damages was not dispositive of willful and malicious injury and did not help Jordan prove that Redmond acted "deliberately" or "intentionally." This Court agrees that the award of punitive damages is not sufficient to find willful and malicious injury. Under Pennsylvania law, punitive damages may be awarded for "outrageous" conduct. *See* Pa. SSJI (Civ) 8.00. "A person's conduct is outrageous when it is malicious, wanton, willful, or oppressive, or shows reckless indifference to the interests of others." *Id.* Reckless conduct includes not only intentionally acts, but also the "fail[ure] to act in conscious disregard of the likelihood of harm to others." Pa. SSJI (Civ) 13.60. Recklessness is not enough for nondischargeability. *See Conte v. Gautam (In re Conte)*, 33 F.3d 303, 307 (3d Cir. 1994).
[28]    *See In re Jacobs*, 381 B.R. at 145 (defining willful as "involving deliberate and intentional conduct")

27
050426

information, "knowingly and intentionally lied" to "induce" materially false statements on

NBOA tax returns, and "knowingly misappropriated" NBOA funds).  The Decision also

establishes that Redmond acted maliciously.[29] *See, e.g. id.* ¶¶ 33, 56, 59 (finding that Redmond

"wrongfully Froze Out Jordan," "knowingly, wrongfully" took NBOA funds, and moved funds

from NBOA with "no evidence of any legitimate business purpose" to Bene Market, LLC).

Finally, the Decision shows that Redmond intended to injure Jordan and/or took actions

substantially certain to cause injury.[30] *See, e.g. id.* ¶¶ 28, 39, 70, 80 (finding that Redmond

changed the locks and posted an armed guard at NBOA "so that Jordan could not enter," "kept

earnings, profits, and distributions solely for himself without sharing any with Jordan," "treated

Jordan in all respects as a total stranger to NBOA and not a Director or Shareholder of NBOA,"

"prevented Jordan from any involvement as a Director of NBOA and [] failed to share NBOA's

financial information with Jordan," misappropriated NBOA assets and transferred the same to

Bene Market, LLC for his "own personal benefit and to the detriment of Jordan," and "serially

fil[ed] bankruptcy on the eve of trial to create the seven year pendency of this litigation so that he

could hold Jordan at arm's length while he drained NBOA's coffers and then moved all assets

over to Bene Market, LLC"). *See Viener v. Jacobs (In re Jacobs)*, 381 B.R. 128, 147 (Bankr.

E.D. Pa. 2008) (finding that the debtor's conduct in squeezing the plaintiff out of the business by

denying him "access to information, the facilities and then his proper share of the benefits," was

intended to harm the plaintiff); *KV Pharm. Co. v. Harland (In re Harland)*, 235 B.R. 769, 779

---

[29]     *See In re Jacobs*, 381 B.R. at 145 (defining malicious as "wrongful"); *In re Kates*, 485
B.R. at 101 (defining "malice" as "actions that are wrongful and without just cause or excuse")
[30]     *See In re Jacobs*, 381 B.R. at 137 (requiring the debtor to have "purposefully inflicted the
injury or acted with substantial certainty that injury would result")

050426

(Bankr. E.D. Pa. 1999).[31] The Decision is therefore sufficient for Jordan to establish the three elements of a discharge exception under § 523(a)(6) (willful and malicious injury). For these reasons, *see also In re Kates*, 485 B.R. at 110 (concluding that the debtor acted willfully and maliciously by misappropriating trade secrets and tortiously interfering with business contracts), the decision of the Bankruptcy Court granting summary judgment on the discharge exception under § 523(a)(6) is reversed.

This Court must now consider whether issue preclusion applies to collaterally estop Redmond from relitigating this issue.[32]

### 4. Issue preclusion- 11 U.S.C. § 523(a)(6) (willful and malicious injury)

As previously mentioned, it is unclear from the record whether all counts proceeded to verdict as the state court's opinion is silent on the charges. *See* Footnote 5, *infra*. The state court Decision does suggest, however, that liability was based on breach of contract. *See* Decision ¶¶ 42-44 (adding emphasis to factual findings relating to Redmond's violation of the Shareholders Agreement "to highlight the Court's finding that these proven facts are the key to this decision"). Under Pennsylvania law, a plaintiff must establish, by a preponderance of the evidence, three things for a successful breach of contract claim: (1) the existence of a contract; (2) a breach of

---

[31] Unlike the debtor in *In re Harland*, who's intent "was focused entirely on maximizing his personal financial interests, not intentionally harming the Plaintiff," Redmond's actions in changing the locks to NBOA's physical business location and posting a guard to preclude Jordan from entering and in treating of Jordan as a stranger to NBOA, *inter alia*, were not necessarily related to Redmond's personal interests in keeping all profits. Rather, this conduct shows that Redmond "intentionally set out to injure" Jordan. *See In re Harland*, 235 B.R. at 779.

At the very least, the Decision is sufficient to create a genuine dispute of fact as to whether Redmond intended to injure Jordan that precludes summary judgment for Redmond. *See also* Section IV(E), *supra*.

[32] The Bankruptcy Court, having found the Decision did not establish all the elements necessary for discharge, offered no opinion as to whether the prerequisites for the application of issue preclusion were satisfied.

duty imposed by the contract; and (3) the plaintiff suffered damages as a result of the breach.

*See Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. Ct. 2002).  The breacher's state of mind is

not relevant.  *See PDP Enters. v. Northwestern Human Servs.*, 2001 Phila. Ct. Com. Pl. LEXIS

114, *15 (explaining that state of mind is not material to a breach of contract claim).  Thus,

whether Redmond breached the contract with Jordan is not the same issue as whether Redmond's

breach resulted in a willful and malicious injury.  *See In re Boltz-Rubinstein*, 454 B.R. 614, 621

(Bankr. E.D. Pa. 2011) (finding the argument that "a mere breach of contract is not a sufficient

basis for a determination of nondischargeability; rather, some heightened, culpable scienter is

required" to be "well taken").  Because Jordan, the adversary "plaintiff prevailed in the prior

proceeding on a claim requiring a less rigorous level of scienter than that required under the

willful and malicious standard of §523(a)(6), issue preclusion is not available."  *See In re Kates*,

485 B.R. at 103.

> **E.**    **Whether the debt is excepted from discharge under § 523(a)(6), only, may
> not be resolved on summary judgment.**

Jordan asserts that if the state court Decision did not satisfy issue preclusion, the

Bankruptcy Court committed reversible error by granting summary judgment in favor of

Redmond instead of sending the case to trial.

As to the discharge exceptions for fraud and for embezzlement, because the state court

Decision does not support nondischargeability under 11 U.S.C. § 523(a)(2)(A) or (a)(4), and

Jordan offered no evidence except for the Decision,[33] he necessarily failed to create a genuine

---

[33]    This Court has also considered the additional evidence attached to Jordan's opposition to
the motion for summary judgment and, as stated previously, finds that it does not create a
genuine issue of material fact.  Notably, the Bankruptcy Judge did review Jordan's proposed
findings of fact and conclusions of law, *see* Bank. Opn. 11 (citing "Opposition, Ex. 1 at 14-18"),
and could have considered both the state court docket and order regardless of the discovery
sanction (through judicial notice and/or matters of public record).  Nothing in these state court

30
050426

issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (A

"complete failure or proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial."). Jordan's assertion that because a person is

presumed to have intended all natural and probable consequences of his actions, "Redmond had

to do a lot more than give any metaphysical explanation for his intent, but one tending to show

whether he honestly held, but was reasonably mistaken in, a belief of entitlement to the property

he took," *see id.* 20-22, is misplaced because it ignores the applicable burden of proof, which is

on Jordan, not Redmond, *see Grogan*, 498 U.S. at 289; *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the *non-moving party* "must do more than

simply show that there is some metaphysical doubt as to the material facts"). For this reason, the

ambiguity of the Decision does defeat summary judgment because it was Jordan's burden to

produce evidence supporting his adversary complaint. *See Celotex*, 477 U.S. at 323 (holding that

the party opposing summary judgment must go beyond the pleadings with affidavits, depositions,

answers to interrogatories or the like in order to demonstrate specific material facts which give

rise to a genuine issue). The Bankruptcy Judge did not err in refusing to send the case to trial as

to the exceptions under § 523(a)(2)(A) and § 523(a)(4). *See id.* at 322 (holding that "the plain

language of Rule 56(c) mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the

---

documents, or in the few pages of the bench trial transcript pertaining to the trial judge's request
for proposed findings of fact and conclusions of law relates to the discharge exceptions.
Similarly, the emails dated January 21, 2025, and Jordan's deposition dated September 30, 2024,
do not provide any evidence of Redmond's intent or of Jordan's reliance on the same.

burden of proof at trial"). Summary judgment in favor of Redmond is therefore affirmed as to the exceptions under § 523(a)(2)(A) and § 523(a)(4).

On the other hand, because the Decision is sufficient evidence for Jordan to support nondischargeability pursuant to § 523(a)(6) and because issue preclusion does not apply, as previously discussed, Redmond's summary judgment motion should have been denied as to the willful and malicious injury exception and the matter scheduled for trial. This action is remanded to the Bankruptcy Court for trial on Jordan's adversary complaint to the extent it alleges that the debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(6).[34]

## V.    CONCLUSION

The Bankruptcy Court's Opinion and Order dated July 31, 2025, granting summary judgment in favor of Redmond is affirmed in part and reversed in part. Jordan's claim that the debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(6) is remanded to the Bankruptcy Court for trial. The Bankruptcy Court's Order dated June 11, 2025, denying Jordan's Motion for Leave to File Sur-Reply is affirmed.

An appropriate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[34]    Because Count II of Jordan's adversary complaint for consequential gains was dismissed as "moot" when Redmond was granted summary judgment on the issue of dischargeability, *see* Bank. Opn. 3 n.2, it is also reversed and remanded.